CÓRDOVA & SIMONPIETRI INSURANCE AGENCY ET AL., demandantes, *v.* CROWN AMERICAN INSURANCE COMPANY OF CANANDA, demandada.

*Número:* O-80-405          *Resuelto:* 14 de mayo de 1982

*Jorge Bermúdez Torregrosa*, de *Hartzell, Ydrach, Mellado, Santiago & Pérez*, abogado de la demandada; *Gilberto Mayo Pagán*, de *Cancio, Cuevas & Mayo*, abogado de los demandantes.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

De conformidad con el procedimiento establecido en la Regla 53.1(c) de Procedimiento Civil y la Núm. 27 del Reglamento de este Tribunal, I Práctica Forense, R. 53.1, Ap. I-A R. 27, la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico nos ha certificado las siguientes preguntas por referirse las mismas a cuestiones de Derecho puertorriqueño que pueden determinar el resultado de la causa pendiente ante ese foro.

1. Si la Ley Núm. 75, de 24 de junio de 1964 (10 L.P.R.A. sec. 278 y ss.) conocida como. Ley de Contratos de Distribución,. es de aplicación a la relación entre un asegurador y un agente general que está haciendo negocios en Puerto Rico bajo el Código de Seguros, 26 L.P.R.A. sec. 1 y ss.

2. Si fue la intención legislativa el no hacer efectiva la Ley Núm. 75, *supra*, a la relación entre un asegurador y un agente general que hace negocios bajo el Código de Seguros, *supra*.

3. Si la Ley Núm. 75, *supra*, es inconstitucional en su aplicación prospectiva por constituir una deprivación de propiedad sin el debido procedimiento de ley.

Las primeras dos preguntas propiamente se reducen a un solo planteamiento: si aplica la Ley de Contratos de Distribución, Núm. 75 de 24 de junio de 1964 (10 L.P.R.A.

sec. 278 y ss.), o el Código de Seguros, 26 L.P.R.A. sec. 1 y ss., a la terminación de un contrato de agencia de seguros entre un asegurador y un agente que hacen negocios en Puerto Rico bajo dicho Código. La formulación del planteamiento en estos términos facilita, a nuestro juicio, el análisis jurídico de la controversia sin que se afecte el propósito de la certificación ni los intereses de las partes. Conviene advertir que los términos específicos utilizados por la Corte federal para la formulación de las preguntas no limitan en forma alguna nuestra facultad para exponer la controversia conforme nuestro mejor entendimiento del récord ni restringe el ámbito de nuestra función interpretativa. Esta es también la norma reconocida en la jurisdicción federal. *DeWitt* v. *Duce*, 642 F.2d 159 (1981); *Martínez* v. *Rodríguez*, 394 F.2d 156 (1968) y *Hopkins* v. *Lockheed Aircraft Corp.*, 358 F.2d 347 (1966).

Con esta advertencia pasamos a resolver el planteamiento, luego de exponer brevemente los hechos que le sirven de marco.

Córdova y Simonpietri Insurance Agency, Inc. fue el agente y representante en Puerto Rico de la aseguradora Crown Life Insurance Company of Canada desde el 1970 hasta marzo de 1979, cuando ésta le notificó la terminación del contrato de agencia a tenor con la cláusula 30 del mismo. Dicha cláusula autoriza a cualquiera de las partes a dar por terminada la agencia mediante notificación al efecto con 30 días de anticipación.

Con motivo de la terminación unilateral del contrato, Córdova y Simonpietri inició en el Tribunal Superior, Sala de San Juan, una acción de reclamación de daños contra Crown, fundada en la mencionada Ley Núm. 75. A petición de Crown el caso se trasladó a la Corte federal, en donde se suscitó la cuestión que nos ha sido certificada para resolución.

La posición de la aseguradora Crown es que el Código de Seguros excluye la aplicación de la Ley Núm. 75 a la

terminación de los contratos de agencias de seguros. Su contención es que dicho Código establece un abarcador esquema regulatorio que se extiende a todas las fases de la relación entre la aseguradora y el agente de seguros, provee múltiples mecanismos para reglamentar los aspectos operacionales, financieros y tarifarios de la industria, y confiere al Comisionado de Seguros amplia facultad para controlar todo lo relacionado con dicha industria con exclusión de toda otra ley. Argumenta, además, que el Art. 9.430 del Código de Seguros específicamente dispone para la terminación de la relación entre la aseguradora y el agente, lo que, por ser legislación especial, excluye la aplicación de una ley general como es la Ley Núm. 75.

Es principio general de interpretación de estatutos que una ley de carácter especial sobre la materia prevalece sobre una de carácter general. Este principio dimana del Art. 12 del Código Civil, 31 L.P.R.A. sec. 12, ([1]) y lo hemos reiterado consistentemente en nuestra jurisprudencia cuando hay conflicto entre dos estatutos, uno de carácter general y otro de carácter especial. *Woods* v. *Tribunal de Contribuciones*, 71 D.P.R. 233 (1950); *París* v. *Canety*, 73 D.P.R. 403 (1952); *Sierra* v. *Tribunal Superior*, 75 D.P.R. 841 (1954). En este caso, sin embargo, no hay conflicto entre el Código de Seguros y la Ley Núm. 75 en lo que concierne a la terminación de contratos de agencia. No empece su abarcador esquema regulatorio, el Código de Seguros en efecto guarda silencio sobre la cuestión, por lo que es ineludible acudir a la Ley Núm. 75 como legislación general sobre la materia, para cubrir esa deficiencia. *Cf. Serrano Ramírez* v. *Clínica Perea, Inc.*, 108 D.P.R. 477 (1979); *Pueblo ex rel. López* v. *Pérez Peña*, 54 D.P.R. 804 (1939).

---

([1]) El Art. 12 del Código Civil dispone:

"En las materias que se rijan por leyes especiales la deficiencia de éstas se suplirá por las disposiciones de este título."

No es correcto el argumento de Crown de que el Art. 9.430 del Código de Seguros específicamente regula la terminación del contrato de agencia al permitir que el asegurador pueda dar por terminado el contrato mediante una notificación por escrito al Comisionado de Seguros, con copia al agente, sin que haya necesidad alguna de mencionar la causa para la terminación. Entiende Crown que este artículo la exime de aducir justa causa. Una mera lectura de su texto es suficiente para demostrar que dicho artículo sólo establece un procedimiento para la cancelación de la licencia de agente de seguros y que nada tiene que ver con la terminación del contrato de agencia. Veamos:

> La licencia de un agente se cancelará a petición por escrito presentada al Comisionado, bien por el agente o bien por el asegurador. Si es el asegurador quien hace la petición, ésta deberá ir acompañada con prueba de que asimismo se ha enviado por correo aviso de dicha petición al agente, y dicha cancelación no será efectiva hasta después que el agente haya recibido la notificación por los canales regulares del correo. La petición del asegurador podrá expresar las causas de dicha cancelación y la información que se suministre al Comisionado será de carácter privilegiado y no podrá utilizarse como prueba en ninguna acción contra el asegurador ni ninguno de sus representantes. Código de Seguros, Art. 9.430 (26 L.P.R.A. sec. 943).

Igualmente es inaplicable el Art. 9.460 del Código de Seguros que autoriza al Comisionado a denegar, suspender, revocar o negarse a revocar una licencia de corredor de seguros excedentes o la de agente general por los motivos que allí se mencionan.

Es cierto que el Código de Seguros proscribe los métodos de competencia desleal o cualquier acto o práctica injusta o engañosa en el negocio de seguros, así como todo acto de boicot, coerción o intimidación que conduzca o tienda a conducir a una restricción irrazonable o a un monopolio del negocio de seguros, Arts. 27.090, 27.100 y

27.300 (26 L.P.R.A. secs. 2709, 2710 y 2730, respectivamente). Pero tales prohibiciones tampoco tienen que ver con la terminación del contrato de agencia. Las mencionadas disposiciones se refieren únicamente a la protección del público contra tales prácticas y no regulan en forma alguna la terminación del contrato de agencia.

En ausencia, pues, de una disposición específica del Código de Seguros que cubra la materia, es necesario acudir a la Ley Núm. 75 como estatuto de carácter general para determinar si dicha Ley cubre o no la terminación de contratos de agencias de seguros.

La Ley Núm. 75 define la figura del distribuidor y del contrato de distribución en los siguientes términos:

(a) Distribuidor: persona realmente interesada en un contrato de distribución por tener efectivamente a su cargo en Puerto Rico la distribución, agencia, concesión o representación de determinada mercancía o servicio.

(b) Contrato de distribución: relación establecida entre un distribuidor y un principal o concedente, mediante la cual . . . el primero se hace . . . cargo de la distribución de una mercancía, o de la prestación de un servicio mediante concesión o franquicia, en el mercado de Puerto Rico.

Ya en *San Juan Merc.* v. *Canadian Transport Co.*, 108 D.P.R. 211, 215 (1978), reconocimos que al interpretar estas disposiciones los distribuidores protegidos por la Ley Núm. 75 no sólo son los que distribuyen mercancías, sino también los que prestan un servicio al principal. Allí identificamos la figura del distribuidor con la "gestión de crear un mercado favorable y conquistar una clientela para un producto o servicio mediante la promoción y conclusión de contratos de venta". El agente de seguros cae de lleno dentro de esta definición.

El Art. 9.010 del Código de Seguros lo define como "la persona, razón social o corporación nombrada por un asegurador para gestionar solicitudes de seguro o negociar seguro en su nombre, y si fuere autorizado para ello por el

asegurador, para efectuar y refrendar contratos de seguros". 26 L.P.R.A. sec. 901. La gestión primordial del agente de seguros consiste, pues, en vender pólizas de seguros; es decir, en promover y concluir contratos de seguros para beneficio de la aseguradora. Uría comenta el contrato de agencia en la siguiente forma:

> Entre los auxiliares autónomos del empresario (v. núm. 29) destacan por su actual importancia en el tráfico los llamados agentes comerciales. La función típica que éstos desempeñan consiste en promover en su actividad, y mediante una retribución, la conclusión de contratos en favor de su principal, o bien la de concluirlos por sí pero a nombre y por cuenta de este último. *El empresario recurre, por tanto, a los agentes con objeto de crear, conservar o ampliar la clientela propia de su establecimiento.* (Énfasis nuestro.) Rodrigo Uría, *Derecho Mercantil*, 11ma ed., 1976, sec. 581.

En orden a lo anterior, concluimos que la actividad mercantil del agente de seguros, en tanto en cuanto promueve y concluye contratos de seguro, constituye la prestación de un servicio mediante concesión o franquicia en el mercado de Puerto Rico bajo la Ley de Contratos de Distribución, *supra.*

Resuelto afirmativamente el planteamiento esbozado al comienzo de la opinión y, en consecuencia, contestadas las primeras dos preguntas certificadas por la Corte federal, procede que dispongamos de la tercera interrogante relativa a la constitucionalidad de la Ley Núm. 75.

La tercera pregunta plantea la validez constitucional de la Ley Núm. 75 en su aplicación prospectiva porque, según se alega, constituye una privación de propiedad sin el debido procedimiento de ley, tanto bajo la Constitución del Estado Libre Asociado como bajo la Constitución federal. En *Pan Ame. Comp. Corp.* v. *Data Gen. Corp.*, 112 D.P.R. 780 (1982), establecimos la norma de no contestar preguntas certificadas cuando la cuestión planteada se refiere a la validez constitucional de una ley

nuestra bajo una disposición de la Constitución del Estado Libre Asociado que es similar a una disposición de la Constitución federal, lo cual es precisamente el planteamiento de la tercera pregunta. Por las razones allí expuestas rehusamos contestar dicha pregunta.

*Se dictará la correspondiente sentencia la cual se remitirá a la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico.*