RADAMÉS COBOS LICCIA y su ESPOSA, ETC., demandantes y recurridos, *v.* DEJEAN PACKING CO., INC., ETC., demandadas y peticionarias.

*Número:* CE-87-614     *Resuelto:* 12 de diciembre de 1989

*Eugenio C. Romero* y *Francisco J. García,* de *Goldman & Antonetti,* abogados de las peticionarias; *Gabriel I. Peñagarícano,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

Resolvemos la interrogante de si el recurrente cumplió con los requisitos esbozados en *P.R. Telephone Co. v. Tribunal Superior,* 103 D.P.R. 200 (1975), y en *Systema de P.R., Inc. v. Interface Int'l,* 123 D.P.R. 379 (1989), para la expedición de un *injunction* preliminar *al amparo de la Ley Núm. 75 de 24 de julio de 1964,* según enmendada, 10 L.P.R.A. sec. 278 *et seq.*

I

El 4 de agosto de 1987 el Sr. Radamés Cobos Liccia presentó ante el Tribunal Superior una demanda sobre violación de contrato de distribución, y solicitud de *injunction* y daños y perjuicios contra DeJean Packing Co., Inc. (DeJean), Borden, Inc. y Borden Interamérica, Inc. La corporación DeJean está incorporada y tiene oficinas principales en el estado de Missouri; Borden, Inc. en el estado de Ohio, y Borden Interamérica, Inc. en Puerto Rico. Esta última es subsidiaria de Borden, Inc. En la demanda, el señor Cobos alega ser el distribuidor exclusivo en Puerto Rico de la línea de productos de mariscos enlatados marca "DeJean" y que, en virtud de un contrato fechado el 2 de junio de 1987, Borden, Inc. adquirió los derechos de fábrica, marca y el inventario de los mariscos enlatados "DeJean". Alega, además, que después de dicha transacción Borden, Inc. transfirió a su filial, Borden Interamérica, Inc., la distribución de dichos productos en Puerto Rico.

La demanda presentada contiene cinco (5) causas de acción. En la primera, el demandante reclama una compensación por los daños sufridos y los beneficios dejados de perci-

bir como consecuencia de la terminación del contrato de distribución; en la segunda, se reclaman daños y perjuicios por incumplimiento de contrato; en la tercera, se reclama a Borden, Inc. y a Borden Interamérica, Inc. el resarcimiento de daños por alegada interferencia torticera en la relación contractual existente entre el demandante y la corporación DeJean; en la cuarta, el pago de honorarios de abogado, y por último, en la quinta causa de acción, se solicita la expedición de un remedio provisional *pendente lite.*

El señor Cobos presentó conjuntamente con la demanda una solicitud de entredicho provisional e *injunction* preliminar, mediante la cual solicitaba del tribunal que ordenase a las codemandadas a continuar la relación contractual con el demandante, según ésta había existido con la corporación DeJean.[1] El señor Cobos no solicitó un *injunction* permanente.

El 4 de agosto de 1987 el tribunal de instancia expidió la orden de entredicho provisional, luego de imponerle al demandante una fianza de mil (1,000) dólares. La vista del *injunction* preliminar se celebró durante los días 20, 25 y 31 de agosto de 1987. Concluida la misma, dicho foro ordenó a DeJean, a Borden, Inc. y a Borden Interamérica, Inc. a desistir durante la duración del litigio de "interferir o en manera al-

---

[1] La solicitud de entredicho provisional e *injunction* preliminar fue hecha al amparo del Art. 3-A de la Ley Núm. 75 de 24 de junio de 1964 (10 L.P.R.A. sec. 278b-1). Este artículo dispone lo siguiente:

"En cualquier pleito en que esté envuelta directa o indirectamente la terminación de un contrato de distribución o cualquier acto en menoscabo de la relación establecida entre el principal o concedente y el distribuidor, el tribunal podrá conceder durante la pendencia del pleito, cualquier remedio provisional o medida de naturaleza interdictal para hacer o desistir de hacer, ordenando a cualquiera de las partes o a ambas a continuar, en todos sus términos, la relación establecida mediante el contrato de distribución, y/o a abstenerse de realizar acto u omisión alguna en menoscabo de la misma. En todo caso en que se solicite el remedio provisional aquí provisto el tribunal considerará los intereses de todas las partes envueltas y los propósitos de política pública que informa este Capítulo.—Junio 24, 1964, Núm. 75, p. 243, art. 3-A, adicionado en Mayo 24, 1971, Núm. 17, p. 33, ef. Mayo 24, 1971."

guna directa o indirectamente realizar cualquier acto en menoscabo de la relación contractual existente a virtud del contrato suscrito entre el demandante y la codemandada DeJean Packing Co., Inc. con fechas 18 de julio y 3 de octubre de 1979". *Exhibit* A, pág. 4.

Inconforme con el dictamen del tribunal de instancia, las codemandadas Borden, Inc., Borden Interamérica, Inc. y DeJean acudieron ante nos mediante recurso de *certiorari* para cuestionar la corrección de la sentencia. En su recurso plantean la comisión de los errores siguientes:

A. Erró el Tribunal Superior de Puerto Rico al expedir una orden de [*injunction*] *pendente lite* bajo las disposiciones de la Ley [sobre] Contratos de Distribución (10 L.P.R.A. Sec. 278(b-1)) contra Borden, Inc. y Borden Interam[é]rica sin ser éstas "principales" bajo la referida ley y no siendo posible proteger el *status quo* entre los contratantes, Cobos Liccia y DeJean.

B. Erró el Tribunal Superior al expedir una orden de [*injunction*] *pendente lite* bajo las disposiciones de la Ley [sobre] Contratos de Distribución (10 L.P.R.A. Sec. 278(b-1)) contra Borden, Inc. y Borden Interam[é]rica sin la fijación de una fianza adecuada para garantizar los daños y perjuicios que se pudiesen ocasionar de decretarse la improcedencia del remedio así obtenido.

C. Erró el Tribunal Superior al concluir que el demandante es un distribuidor protegido por la Ley [sobre] Contratos de Distribución (10 L.P.R.A. Sec. 278, et seq.). Petición de *certiorari*, págs. 5–6.

El 1ro de octubre de 1987, en auxilio de nuestra jurisdicción, paralizamos los procedimientos del tribunal de instancia y concedimos al señor Cobos un término para que compareciera a mostrar causa por la cual no debíamos revocar la determinación del Tribunal Superior. La parte recurrida ha comparecido y estamos en posición de resolver según lo intimado.

## II

El *injunction* preliminar es aquel que se emite en cualquier momento del pleito, después de haberse celebrado una vista en la que las partes hayan presentado prueba en apoyo de tal solicitud. Normalmente se solicita junto con la presentación de pleito en situaciones de urgencia. D. Rivé, *El Injunction en Puerto Rico*, LIII Rev. Jur. U.P.R. 341 (1984).

El propósito fundamental del *injunction* preliminar es el de mantener el statu quo hasta que se celebre el juicio en sus méritos para que la conducta del demandado no produzca una situación que convierta en académica la sentencia que finalmente se dicte, o que se le ocasione daños de mayor consideración al peticionario mientras perdura el litigio. *Sucn. Figueroa v. Hernández*, 72 D.P.R. 508 (1951); D. Rivé, *Recursos Extraordinarios*, San Juan, Facultad de Derecho, U.I.A., 1989.

Sobre la parte promovente del *injunction* preliminar o *pendente lite* recae el peso de probar su procedencia. *P.R. Telephone Co. v. Tribunal Superior*, supra. Para que proceda su concesión hay que considerar una serie de criterios que se sintetizan en los siguientes: (1) la naturaleza de los daños que pueden ocasionársele a las partes de concederse o denegarse el *injunction*; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne en académica de no concederse el *injunction*, y (5) sobre todo, el posible impacto sobre el interés público del remedio que se solicita. *P.R. Telephone Co. v. Tribunal Superior*, supra, pág. 202; *Aoude v. Mobil Oil Corp.*, 862 F.2d 89 (1er Cir. 1988).

En el caso particular del *injunction* preliminar *provisto por la Ley Núm. 75*, supra, no son necesariamente de aplicación todos los criterios esbozados en *P.R. Telephone Co. v. Tribunal Superior*, supra. Por otra parte el tribunal, al evaluar la conveniencia de expedirlo *al amparo de la Ley Núm. 75*, supra, debe hacer un balance de equidad, lo cual conlleva examinar los intereses de las partes involucradas, los propósitos de esta legislación *y si la prueba presentada demuestra prima facie que el demandante es un distribuidor protegido por dicha ley.* No se debe actuar con automatismo judicial. Se requiere un ponderado balance de los intereses y las equidades de las partes. *Systema de P.R., Inc. v. Interface Int'l*, supra.

Al igual que en *Systema de P.R., Inc. v. Interface Int'l*, supra, estamos ante un *injunction* preliminar expedido *en virtud de la Ley Núm. 75*, supra. Por ello, el determinar la probabilidad de que el señor Cobos sea un distribuidor protegido por dicha ley es el eje central con respecto a si procede o no el remedio interdictal solicitado. Ello es así, pues siendo éste un *injunction* estatutario, lo determinante preliminarmente es si la situación está o no cobijada bajo dicho estatuto.

Al hacerlo examinaremos la realidad operacional de la empresa del señor Cobos para, a la luz de lo dispuesto en el contrato entre las partes y del hecho de cómo se llevaban a cabo los negocios entre ellas, concluir así si el demandante cumple con los requisitos que la Ley Núm. 75, *supra*, y la jurisprudencia exigen para ser considerado como distribuidor. El resultado del análisis de este planteamiento contenido en el tercer señalamiento de error dispondrá a su vez de los primeros dos (2).

### III

Desde 1966 el Sr. Radamés Cobos Liccia había iniciado mediante contrato escrito una relación comercial con la corporación DeJean. Este contrato fue renovado sustancialmente bajo los mismos términos en 1979. En este último contrato titulado "representación de ventas" (*sales representation*), la corporación DeJean compareció como principal y el señor Cobos como corredor (*food broker*). Mediante dicho contrato la corporación DeJean obtuvo los servicios de un corredor que negociaba en Puerto Rico la venta de los productos marca "DeJean". De acuerdo con el contrato, los términos de las ventas y los precios de los productos serían fijados por la corporación, y todas las órdenes estarían sujetas a su confirmación. A cambio de sus servicios, el señor Cobos recibiría una comisión de un cinco por ciento (5%), calculada a base del volumen total de las ventas cobradas.

El señor Cobos operaba el negocio desde su propia residencia. Tenía a su cargo seis (6) vendedores, quienes viajaban a toda la isla para procurar las órdenes de sus clientes, que eran en su mayoría grandes cadenas de supermercados, mayoristas y los negocios conocidos como *Cash and Carry*. Los vendedores tomaban las órdenes y las entregaban al señor Cobos. Éste, a su vez, las refería a un almacén localizado en Puerto Rico conocido como *Econo-Freight*. En este almacén, el cual pertenecía a una corporación independiente del señor Cobos y de la corporación DeJean, se depositaban los productos marca "DeJean" que estaban en inventario para ser vendidos.

Econo Caribe, una corporación con sede en Miami, Florida, dedicada al transporte y almacenaje de mercancía, embarcaba ésta en furgones a sus almacenes *Econo-Freight* en Puerto Rico. Los comprobantes de mercancía recibida en dicho almacén se hacían a nombre de DeJean y le eran entregados a ésta.

El señor Cobos no tenía un contrato con dicho almacén. DeJean le pagaba al almacén los fletes y el almacenaje de la mercancía. La mercancía no le pertenecía al señor Cobos ni éste respondía de sus pérdidas o destrucción. Mensualmente el señor Cobos informaba a DeJean la mercancía que había en existencia en el almacén y la que necesitaría para el futuro inmediato. Dicho almacén entregaba la mercancía a los clientes, según las órdenes que les proveía el señor Cobos, y luego de entregada le remitía a éste un recibo de entrega (*proof of delivery*). El señor Cobos refería a su vez el recibo a la corporación DeJean para que le facturasen directamente a los compradores. Los clientes podían efectuar el pago a la corporación DeJean o al señor Cobos. Luego de concluido este proceso, el señor Cobos recibía su comisión.

## IV

Ante un *injunction* preliminar al amparo de la *Ley Núm. 75*, supra, es importante determinar, *en primer lugar*, si se presentó prueba suficiente sobre si le cobija la protección de dicha ley, ya que de ello dependerá en gran medida la probabilidad del demandante de prevalecer bajo la acción instada al amparo de esta ley y la determinación de si procede dicho *injunction* estatutario luego de considerar los factores expuestos en *P.R. Telephone Co. v. Tribunal Superior*, supra, y en *Systema de P.R., Inc. v. Interface Int'l*, supra.

El inciso (b) del Art. 1 de la Ley Núm. 75, *supra*, 10 L.P.R.A. sec. 278(b), define el término "contrato de distribución" de la manera siguiente:

> ... relación establecida entre un distribuidor y un principal o concedente, mediante la cual, e irrespectivamente de la forma en que las partes denominen, caractericen o formalicen dicha relación, el primero se hace real y efectivamente cargo de la distribución de una mercancía, o de la prestación de un servicio mediante concesión o franquicia, en el mercado de Puerto Rico.

Por otra parte, el inciso (a) del mismo artículo define el término "distribuidor" como:

[La] persona realmente interesada en un contrato de distribución por tener efectivamente a su cargo en Puerto Rico la distribución, agencia, concesión o representación de determinada mercancía o servicio. 10 L.P.R.A. sec. 278(a).

■ Un contrato de distribución se caracteriza "por su continuidad, estabilidad, confianza mutua [y] coordinación entre ambas partes en calidad de empresarios independientes, sin subordinación jerárquica . . .". *J. Soler Motors v. Kaiser Jeep Int'l*, 108 D.P.R. 134, 142 (1978). En un contrato de esta naturaleza "[c]ada empresario explota su propia empresa en su nombre, asume sus propios riesgos y busca su propio lucro". *Medina & Medina v. Country Pride Foods*, 122 D.P.R. 172, 187 (1988).

■ La Ley Núm. 75, *supra*, está revestida de un gran interés público. Su finalidad consiste en "nivelar las condiciones de contratación de dos grupos económicamente dispares en su fuerza". *Walborg Corp. v. Tribunal Superior*, 104 D.P.R. 184, 189 (1975). La ley evita que un principal se apodere de la plusvalía de un negocio luego de que un distribuidor local ha conquistado un mercado y una clientela a través de su gestión empresarial. *San Juan Merc. v. Canadian Transport Co.*, 108 D.P.R. 211 (1978).

■ Recientemente hemos tenido la oportunidad de expresarnos de nuevo sobre contratos de distribución. *Pacheco v. Nat'l Western Life Ins. Co.*, 122 D.P.R. 55 (1988); *Roberco, Inc. y Colón v. Oxford Inds., Inc.*, 122 D.P.R. 115 (1988); *Medina & Medina v. Country Pride Foods*, supra. En *Roberco, Inc. y Colón v. Oxford Inds., Inc.*, supra, pág. 131, definimos el término "distribuidor" de la manera siguiente:

Un "distribuidor" es un empresario mercantil independiente que ha establecido una relación de continuidad y dura-

ción, fija o indeterminada, con otro empresario principal para la distribución de un producto o servicio. Esta relación se caracteriza por la cooperación, la estabilidad y la confianza mutua que genera. Su finalidad es la creación, el desarrollo y la coordinación del mercado, y la obtención de nueva clientela. (Escolio omitido.)

También señalamos en *Roberco, Inc. y Colón v. Oxford Inds., Inc.*, supra, que ante un reclamo de una parte que afirma ser un distribuidor, los tribunales deberán considerar una serie de criterios antes de determinar si el reclamante es efectivamente un distribuidor protegido por la Ley Núm. 75, *supra*. Estos criterios son:

> . . . si el "distribuidor" realiza una activa promoción y/o conclusión de contratos; si adquiere inventario; si ejerce control sobre los precios; si tiene discreción en cuanto a pactar los términos de las ventas; si tiene responsabilidad por la entrega y cobro de la mercancía, y autoridad para conceder crédito; si lleva a cabo gestiones, independientes o conjuntas, de publicidad; si ha asumido el riesgo y responsabilidad en la gestión que realiza; si compra el producto, y si tiene facilidades físicas y ofrece servicios relacionados con el producto a sus clientes. A éstos pueden añadírsele otros sin que se entienda ni pretenda hacer un listado exhaustivo. *Roberco, Inc. y Colón v. Oxford Inds., Inc.*, supra, págs. 131–132.

Aunque no tienen que estar presentes todos, para poder determinar si el demandante es un distribuidor protegido por la Ley Núm. 75, *supra*, debemos considerar estos criterios a la luz de la prueba vertida ante el tribunal de instancia, según surge de los autos, a los fines de determinar si dicha prueba es suficiente para concluir que existe una probabilidad de éste prevalecer, de dictarse el *injunction* preliminar.

El texto claro y preciso del contrato de distribución en controversia establecía que la aceptación de las órdenes de compra y de perfeccionar los mismos recaía exclusivamente en la corporación DeJean (Cl. 2 del contrato). T.E., págs. 50–51. Además, la manera en que se llevaba a cabo la operación comercial del señor Cobos así lo confirma.

El señor Cobos atestó en las vistas celebradas el 20, 25 y 31 de agosto de 1987 que la mercancía almacenada en Puerto Rico no le pertenecía y que a él no podía considerársele como su dueño. T.E., pág. 46. Su declaración demuestra que éste no adquiría los productos ni adquiría inventario.

Conforme al contrato suscrito en 1979 (Cl. 2) y por la forma en que éste se instrumentaba en la práctica (T.E., pág. 38) surge claramente que el señor Cobos no tenía autoridad para fijar los precios de la mercancía y que las ventas se realizaban en conformidad con los términos y las condiciones establecidas por la corporación DeJean.

El señor Cobos tampoco desempeñaba una función importante en el proceso de entregas de mercancía. El almacén se encargaba de hacerlo directamente a los compradores de los productos y el costo de dicha entrega era sufragado por la corporación DeJean. El señor Cobos se limitaba a remitir al almacén las órdenes de compra de los clientes. T.E., págs. 5, 9 y 47.

Si bien el señor Cobos enviaba a la corporación DeJean un recibo de entrega de la mercancía, era esta última la que facturaba a los clientes. T.E., págs. 9, 54 y 55. Los clientes luego pagaban al señor Cobos, quien a su vez remitía el pago a la corporación. T.E., págs. 54 y 55.

El señor Cobos, conforme al contrato suscrito, no tenía facultad para conceder crédito. Tal facultad, conforme al contrato (Cl. 12), residía en la corporación DeJean. Tampoco realizó gestiones de publicidad sobre los productos. La prueba demuestra que el señor Cobos sólo realizó dos (2) actividades de promoción en el Club de Leones durante 1986, pero sin que se detalle la gestión llevada a cabo.

De los autos no surge prueba de la cual podamos concluir que el señor Cobos era responsable de los riesgos de la gestión comercial que llevaba a cabo o de la mercancía, o que tuviera alguna obligación o responsabilidad frente a terceros.

## V

Un análisis cuidadoso de los autos refleja que el demandante, señor Cobos, no presentó prueba suficiente para establecer la probabilidad de que era un distribuidor protegido por la Ley Núm. 75, *supra*. No demostró que cumplía siquiera con algunos de los criterios expuestos en *Roberco, Inc. y Colón v. Oxford Inds., Inc.*, supra, que definen la figura jurídica del distribuidor, y con los expuestos en *San Juan Merc. v. Canadian Transport Co.*, supra.

■ Según esta jurisprudencia, el distribuidor es fundamentalmente el responsable de gestionar la creación de un mercado favorable y de conquistar la clientela para un producto o servicio mediante la promoción y conclusión de contratos de venta. Por ello la publicidad, la coordinación del mercado, las entregas de mercancía, los cobros, la promoción y el perfeccionamiento de los contratos constituyen en general sus obligaciones. *San Juan Merc. v. Canadian Transport Co.*, supra; *Roberco, Inc. y Colón v. Oxford Inds., Inc.*, supra. El señor Cobos tampoco presentó prueba que cumpliera con los criterios esbozados en *P.R. Telephone Co. v. Tribunal Superior*, supra, y de que al examinar los intereses de las partes y los propósitos de la Ley Núm. 75, *supra*, sus intereses y equidades justificarían la expedición del *injunction* preliminar. *Systema de P.R., Inc. v. Interface Int'l*, supra.

El análisis de la prueba demuestra que el señor Cobos no era un distribuidor conforme lo define la Ley Núm. 75, *supra*, y la jurisprudencia. La relación contractual y la realidad operacional reflejan que éste era un intermediario.

Por otra parte, la relación contractual del señor Cobos era con la corporación de DeJean. No existe suficiente prueba para demostrar que las corporaciones Borden, Inc. y Borden Interamérica, Inc., al adquirir la corporación DeJean, tuvieran una relación de principal con el señor Cobos.

Incidió el tribunal de instancia al expedir el *injunction* preliminar bajo tales circunstancias.

*Se revoca la sentencia del foro de instancia que expidió el "injunction" preliminar contra DeJean, Borden, Inc. y Borden Interamérica, Inc. Se devuelve el caso para que el tribunal de instancia, en la acción ordinaria, continúe los procedimientos compatibles con lo aquí dispuesto y determine qué derechos le asisten al señor Cobos bajo la relación contractual existente. Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Rebollo López no intervino.