CC-2000-03                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


| | |
|---|---|
| Israel Lorenzana Torres y otros<br>      Demandantes-Recurridos<br><br>              v.<br><br>General Accident Insurance Company<br>y General Accident Insurance Agency<br>      Demandadas-Peticionarias | Certiorari<br><br>2001 TSPR 108<br><br>154 DPR _____ |


Número del Caso: CC-2000-3


Fecha: 29/junio/2001


Tribunal de Circuito de Apelaciones:
                          Circuito Regional I


Juez Ponente:
                          Hon. Yvonne Feliciano Acevedo


Abogado de la Parte Peticionaria:
                          Lcdo. Jesús M. Del Valle


Abogado de la Parte Recurrida:
                          Lcdo. Hugo Rodríguez Díaz


Materia: Daños y Perjuicios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Israel Lorenzana Torres y
otros

        Demandantes-Recurridos

            vs.                         CC-2000-3        Certiorari

General Accident Insurance
Company y General Accident
Insurance Agency
        Demandadas-Peticionarias

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 29 de junio de 2001.

Debemos, una vez más, examinar la figura del distribuidor bajo la Ley sobre Contratos de Distribución. Específicamente, nos toca resolver hoy si un agente de seguros que no está autorizado para fijar precios ni completar contratos es un distribuidor para los efectos de dicha Ley. Resolvemos que las protecciones de la Ley Núm. 75 no cobijan a un agente con una autoridad tan limitada como el del caso de autos.

I

El Sr. Israel Lorenzana Torres se desempeñaba como agente de seguros       independiente       con       el       grupo

de trabajo del Sr. José Martínez Cosme, quien poseía licencia de agente de seguros con las demandadas General Accident Insurance Company y General Accident Insurance Agency (en adelante "General"). General le pagaba comisiones a Lorenzana por las pólizas que él gestionaba.

General instaló terminales de computadoras en la oficina de Martínez. A través de dichos terminales, los agentes enviaban la información de los casos a General. Dicha corporación analizaba los casos y, si los aprobaba, emitía una póliza a través de una impresora que también estaba colocada en la oficina de Martínez.

El negocio de Martínez se incorporó bajo el nombre Insurance Advisory Group, Inc. (en adelante "Advisory"). Advisory solicitó, ante la Oficina del Comisionado de Seguros, y obtuvo una licencia como agente en representación de General. Posteriormente Martínez le vendió al Sr. Carlos Class Gago todos los activos de Advisory, que a su vez se los traspasó a Lorenzana.

Después de dicha transacción, General le informó a Martínez que le iba a enviar una nueva tabla de comisiones la cual daría por terminado cualquier arreglo de comisiones en vigor. Dicha comunicación nunca se le envió ni a Lorenzana ni a ninguno de los demás agentes del grupo. Posteriormente, General comenzó a pagar a Lorenzana comisiones menores a las originalmente estipuladas. Así las cosas, Lorenzana envió una carta a General donde le solicitó que corrigieran las cantidades por comisión recibidas.

General contestó mediante una carta a la cual anexó dos cheques pagando la diferencia entre las comisiones pagadas hasta ese momento, y notificándole a Lorenzana que, debido a las diferencias surgidas, no se aceptarían más negocios entre ellos.

Lorenzana, entonces, presentó una demanda contra General alegando que él y Advisory eran distribuidores de General bajo la Ley sobre Contratos de Distribución, Ley Núm. 75 de 24 de junio de 1964, según enmendada, y que sus contratos habían sido terminados sin que mediara justa causa, en contravención con las disposiciones de dicha Ley. General, por su parte, alegó en su contestación a la demanda que no era responsable porque Lorenzana había incumplido con sus obligaciones contractuales, y que la relación entre las partes no estaba cobijada por la Ley Núm. 75.

El Tribunal de Primera Instancia dictó sentencia parcial a favor de Lorenzana y determinó que dicho agente era un distribuidor bajo la Ley Núm. 75 y que su contrato había sido terminado sin justa causa. General recurrió ante el Tribunal de Circuito de Apelaciones, y dicho foro confirmó la sentencia de instancia.

Inconforme, acude ante nos alegando que el foro apelativo erró al determinar que Lorenzana era un distribuidor cobijado por las protecciones de la Ley Núm. 75, y al resolver que existía un contrato entre las partes. Por entender que la relación contractual entre las partes no constituye un contrato de distribución, revocamos la sentencia del Tribunal de Circuito de Apelaciones.

II

La Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. secs. 278 *et seq.*, prohíbe que un principal que tenga un contrato de distribución con un agente termine, o se niegue a renovar, dicha relación sin justa causa. Por razones de política pública, la propia Ley establece que las protecciones y derechos otorgados a los distribuidores no son renunciables. 10 L.P.R.A. sec. 278a. La Ley Núm. 75 fue promulgada en reacción al creciente número de casos en que empresas domésticas y del exterior, sin causa justificada, eliminan sus distribuidores tan pronto dichos agentes han creado un mercado favorable para el producto del principal. 1966 Leyes de Puerto Rico 347, 348. La legislatura entendió que la estabilidad razonable en las relaciones de distribución en Puerto Rico es vital a la economía general del país, y que era necesario evitar los abusos que ciertas prácticas estaban ocasionando en esa área. Id.

Una de las cuestiones centrales a la aplicación de la Ley Núm. 75 es la definición de "distribuidor". La Ley misma define "distribuidor" como la "persona realmente interesada en un contrato de distribución por tener efectivamente a su cargo en Puerto Rico la distribución, agencia, concesión o representación de determinada mercancía o servicio." 10 L.P.R.A. sec. 278(a). El "contrato de distribución", por su parte, es la:

> relación establecida entre un distribuidor y un principal o concedente, mediante la cual, e irrespectivamente de la forma en que las partes denominen, caractericen o formalicen dicha relación, el primero se hace real y efectivamente cargo de la distribución de una mercancía, o de la prestación de un servicio mediante concesión o franquicia, en el mercado de Puerto Rico. 10 L.P.R.A. sec. 278(b).

Aunque estas definiciones sirven de base para la determinación de si un agente está cobijado por la Ley Núm. 75 como distribuidor de un producto o servicio, en ocasiones anteriores hemos observado que las mismas resultan muy esquemáticas, amplias y poco precisas, y que, por lo tanto, es necesario delimitar su contenido a la luz de los fines que persigue dicho estatuto. Roberco v. Oxford Industries, Inc., 122 D.P.R. 115, 122–23 (1988).

A estos efectos, hemos definido a grandes rasgos la figura del distribuidor como una que "se identifica fundamentalmente por su gestión de crear un mercado favorable y conquistar una clientela para un producto o servicio mediante la promoción y conclusión de contratos de venta." San Juan Mercantile Corp. v. Canadian Transport Co., 108 D.P.R. 211, 215 (1978). "Son precisamente el tiempo, el dinero, las energías y las facilidades que ha invertido el 'distribuidor' los fundamentos para la indemnización que al amparo del estatuto se concede cuando el principal da por terminado el contrato sin justa causa, causándole con ello daños al 'distribuidor'." Roberco, supra, en la pág. 123.

También hemos establecido que un contrato de distribución se caracteriza "por su continuidad, estabilidad, confianza mutua [y] coordinación entre ambas partes **en calidad de empresarios independientes, sin subordinación jerárquica**." J. Soler Motors v. Kaiser Jeep Int'l, 108 D.P.R. 134, 142 (1978) (*énfasis suplido*).

A tenor con estos principios básicos, ya reconocidos por nuestra jurisprudencia, es fácil advertir cómo en los contratos de distribución, que normalmente son de duración muy larga, **se hace absolutamente necesario que tanto principal como distribuidor puedan variar y negociar de buena fe los precios y términos de crédito** para la venta de los productos objeto de la concesión. Medina & Medina v. Country Pride Foods, 122 D.P.R. 172, 188-189 (1988) (*énfasis suplido*). Véase además, Borg Warner International Corp. v. Quasar Company, 138 D.P.R. 60, 78 (1995).

En este tipo de contrato "cada empresario explota su propia empresa en su nombre, asume sus propios riesgos y busca su propio lucro". Medina & Medina, supra, en la pág. 187. Usualmente, esta relación acarrea una inversión de parte del distribuidor. Roberco, supra, en la pág. 124.

La Ley Núm. 75 aplica tanto a los distribuidores de mercancías como a los que prestan un servicio. Córdova & Simonpietri Insurance Agency v. Crown American Insurance Co. of Canada, 112 D.P.R. 797 (1982). Así pues, en Córdova, supra, extendimos las protecciones de la Ley Núm. 75 a una compañía de seguros. También hemos aclarado que no es requisito bajo la Ley Núm. 75 el que un distribuidor tenga un contrato de exclusividad con el principal, ni que su distribución cubra todo el territorio de Puerto Rico. J. Soler Motors, supra, en las págs. 140-141.

Es sumamente importante recordar que:

La cadena de distribución, desde el fabricante hasta que el producto llega a manos del consumidor, puede estar integrada por un sinnúmero de auxiliares o intermediarios del comercio. Resulta obvio que no todos cualifican para la protección que brinda la Ley Núm. 75, **supra**. Para que se considere al auxiliar o intermediario del comercio como "distribuidor" no basta un mero contacto con el producto en el camino de éste pasar del fabricante o suplidor al consumidor; hace falta algo más. Roberco, supra, en la pág. 131.

Así pues, en Roberco, supra, establecimos una distinción clave entre dos auxiliares del comercio fundamentalmente diferentes: el distribuidor y el viajante. El viajante auxilia al empresario de forma estable y continuada, y su actividad comercial se despliega fuera del establecimiento del empresario. "El viajante extiende la clientela del comerciante, dando a conocer al público distante del establecimiento las mercancías (mediante muestras generalmente) o los servicios que en él se obtienen. De la habilidad y competencia del viajante depende muchas veces la prosperidad del negocio." J. Garrigues, 1 Curso de Derecho Mercantil, 7ma ed., Madrid, Ed. Aguirre, en las págs. 673-74 (1976).

Sin embargo, también es cierto que "[l]as facultades del viajante se gradúan diversamente en la práctica: unas veces su poder se extiende a la conclusión del contrato de venta (con autorización o no para percibir el precio); otras veces sólo está autorizado para transmitir ofertas de contrato al principal; otras, finalmente, puede pactar, pero subordinado el contrato a la aprobación del principal." Id. Por otra parte, el distribuidor "asume un riesgo comercial superior al que resulta de la simple cláusula de comisión." Medina & Medina, supra. Este nivel de riesgo y de independencia empresarial crea una fundamental diferencia entre el viajante y el distribuidor. Por lo tanto, aunque "ensancha[] constantemente el círculo de operaciones de la empresa, conservando, renovando y aumentando en lo posible la clientela", R. Uría, Derecho Mercantil, 11ma ed. Madrid, Ed. Aguirre, en

la pág. 52 (1976), **"el viajante propiamente no goza de la protección de la [Ley Núm. 75]."** Roberco, supra, en la pág. 129 (*énfasis suplido*).

Al diferenciar entre el distribuidor, que goza de la protección de la Ley Núm. 75, y el viajante, que no está protegido por dicha Ley, debemos tomar en consideración una serie de factores: 1) si el agente promueve y concluye contratos; 2) si adquiere inventario; 3) si ejerce control sobre los precios; 4) si tiene discreción en cuanto a pactar los términos de las ventas; 5) si tiene responsabilidad por la entrega y cobro de la mercancía o servicio; 6) si tiene autoridad para conceder crédito; 7) si lleva a cabo gestiones, independientes o conjuntas, de publicidad; 8) si ha asumido el riesgo y responsabilidad en la gestión que realiza; 9) si compra el producto; y 10) si tiene facilidades físicas y ofrece servicios relacionados con el producto a sus clientes. Roberco, supra, en las págs. 131–132; Cobos Liccia v. DeJean Packing Co., 124 D.P.R. 896, 907 (1989). Entendemos que estos diez (10) criterios constituyen un buen resumen de los requisitos y las características establecidas por la jurisprudencia de este Tribunal referente a la figura del distribuidor bajo la Ley Núm. 75. Sin embargo, debemos aclarar que éste no pretende ser un listado exhaustivo de los factores a considerarse. Id. Además, ninguno de estos criterios es determinante por sí solo ni tiene siempre mayor peso o importancia que los otros. Id.

III

Antes de proceder a aplicar estos criterios al caso de autos, debemos hacer una importante aclaración. General basa gran parte de su argumento en la distinción que hace el Código de Seguros entre un agente **general** de seguros bajo el Art. 3.340, y el agente de seguros bajo el Art. 9.010 de dicho Código. Alega que, aunque el agente general sí está cubierto por las protecciones de la Ley Núm. 75 bajo nuestras decisiones en Córdova, supra, y Oliveras v. Universal Insurance Co., 141 D.P.R. 900 (1996), el agente de seguros regular no está protegido. Por otro lado, Lorenzana argumenta que Córdova, supra, y Oliveras, supra, resolvieron que **todos** los agentes de seguros son distribuidores para efectos de la Ley Núm. 75. Ambos puntos de vista están fundamentalmente errados.

La determinación referente a si un agente de seguros es un distribuidor es una cuestión de interpretación de la Ley Núm. 75, y no del Código de Seguros. Las figuras jurídicas establecidas en dicho Código no crean distinciones talismánicas para propósitos de la Ley Núm. 75. La definición de "distribuidor" gira en torno a los factores arriba mencionados. Al resolver si un comerciante en particular, en este caso un agente de seguros en particular, está cubierto por las disposiciones de la Ley Núm. 75, debemos hacer un análisis de la naturaleza de la relación principal-agente presente en cada caso particular.

Por lo tanto, lo resuelto anteriormente en Córdova, supra, y Olivares, supra, no dispone del caso de autos. Estos casos resolvieron que la Ley Núm. 75 **puede ser** de aplicación a los agentes de seguros. En Córdova, supra, explicamos que las disposiciones del Código de Seguros no servían para excluir a los agentes de seguros de las protecciones de la Ley

Núm. 75. Además, resolvimos que un agente de seguros está cubierto por dicha Ley, **a pesar de dedicarse a la venta de un servicio y no un producto**, "en tanto en cuanto promueve **y concluye** contratos de seguro." Córdova, supra, en la pág. 803 (*énfasis suplido*). Como discutiremos más adelante, los recurridos no tenían autoridad para **concluir** contratos de seguro. Por tanto, Córdova, supra, y Oliveras, supra, son distinguibles del caso de autos.

Cabe también mencionar que las personas en esos casos eran agentes generales bajo el Código de Seguros. General enfatiza el hecho que, de ordinario, los agentes generales tienen más control e independencia al promover y concluir pólizas de seguro. El Código de Seguros define un agente general de la siguiente manera:

> persona nombrada o contratada por un asegurador como contratista independiente o por comisión, total o parcialmente, **con poderes o deberes generales** para inspeccionar el otorgamiento y las operaciones de servicio de pólizas del asegurador, nombrar agentes para el asegurador y llevar a cabo otras funciones que se confieran a agentes generales por la costumbre de la clase o clases de seguros hechos o el tipo de asegurador representado. 26 L.P.R.A. sec. 334(1) (*énfasis suplido*).

Muy bien puede ser cierto que haya una alta correlación entre el ser agente general y el satisfacer más cabalmente los criterios de la definición de "distribuidor". Sin embargo, el sello de agente general, o su ausencia, no es lo que define a un agente de seguros como un distribuidor. No podemos olvidar que "[d]icho agente general o gerente tendrá la autoridad, consistente con [el Título 26], que se le confiera por el asegurador." 26 L.P.R.A. sec. 334(3). Por lo tanto, es necesario hacer un análisis de cada caso para determinar si la autoridad concedida a cada agente es suficiente para que se cree una relación contractual cubierta por la Ley Núm. 75.

De igual manera, el no ser un agente general, y ser tan sólo un agente bajo el Art. 9.010, no significa automáticamente que la Ley Núm. 75 no sea aplicable. Dicho Artículo define al agente como "la persona, razón social o corporación nombrada por un asegurador para gestionar solicitudes de seguros o negociar seguros en su nombre, **y si fuere autorizada para ello por el asegurador, para efectuar y refrendar contratos de seguros**." 26 L.P.R.A. sec. 901 (*énfasis suplido*). Lo importante, pues, es la naturaleza y el alcance de la autoridad que ha sido concedida al agente en cada caso. La flexibilidad que le da el Código de Seguros a los aseguradores al contratar con sus agentes exige que hagamos una determinación caso a caso de si existe suficiente autoridad en una relación específica para que el agente se pueda considerar un distribuidor.

General también intenta hacer una distinción entre los agentes que representan compañías de seguros extranjeras *vis a vis* los que representan compañías locales. Rechazamos esta distinción. No hay nada en la Ley Núm. 75 que nos mueva a considerar una aplicación distinta a compañías extranjeras. De más está decir que tal aplicación tendría que ser examinada a la luz de la garantía constitucional de la igual protección de las leyes.

Aclarados estos asuntos, analicemos más en detalle algunos de los casos referentes a la definición de un "distribuidor".

Ya en varias ocasiones hemos tenido la oportunidad de distinguir entre las figuras del distribuidor y del viajante. Así pues, en Roberco, supra, nos enfrentamos a una situación de hechos similar a la de autos. En ese caso, el demandante no mantenía inventario ni facilidades de almacén, no compraba el producto ni tenía la responsabilidad de cobrar y entregar la mercancía, no realizaba gestiones de publicidad significativas, no tenía control de los precios ni discreción para pactar los términos de las ventas y conceder crédito, no asumía el riesgo o responsabilidad por la venta, y tampoco concluía los contratos de venta. En ese caso no se cumplía sustancialmente con ninguno de los criterios expuestos anteriormente. Bajo estas circunstancias, resolvimos que este auxiliar del comercio era un viajante y no un distribuidor bajo la Ley Núm. 75.

En Cobos Liccia, supra, tuvimos ocasión de aplicar nuevamente la regla pautada en Roberco, supra. En ese caso nos enfrentamos a una relación contractual en la que el agente no tenía autoridad para perfeccionar los contratos, no podía fijar los precios ni los términos de venta, no se encargaba de la entrega de los productos, no tenía facultad para conceder crédito, no realizaba gestiones de publicidad sustanciales, y no asumía riesgo ni responsabilidad por las ventas. El agente sí le conseguía contratos al principal y recibía en ocasiones los pagos por la mercancía. Además, realizó dos (2) actividades de promoción en un año. Sin embargo, esto no fue suficiente para que le extendiéramos a Cobos Liccia las protecciones de la Ley Núm. 75. Cabe mencionar que entendimos que las actividades de promoción a las que se refiere la jurisprudencia son más extensas y sustanciales que las que efectuaba el agente en ese caso.

Por su parte, los tribunales federales han tenido también oportunidad de analizar la definición de "distribuidor" bajo la Ley Núm. 75.[1] Dichos tribunales se han enfrentado a una gran variedad de situaciones de hechos al aplicar los criterios establecidos por este Tribunal referentes a la figura del distribuidor.

Así pues, en Cruz Ramos v. Brother Intern. Corp., 445 F. Supp. 983 (D.P.R. 1978), aff'd 588 F.2d 817 (1st Cir. 1978), el Tribunal de Distrito para el Distrito de Puerto Rico excluyó de la definición de "distribuidor" a un demandante que simplemente recibía una comisión por las ventas que realizaba.[2] Los tribunales federales también han resuelto, a la par con nuestros pronunciamientos, que el envolverse en la promoción del producto y lograr expandir el mercado no es suficiente para convertirse en un distribuidor. Ser un distribuidor requiere, además, cierto grado de control sobre el negocio. "[P]laintiff's

---

[1] Esto se debe a que la mayor parte de las corporaciones matrices con contratos de distribución en Puerto Rico son compañías extranjeras. Como tal, los tribunales federales tienen jurisdicción sobre los pleitos que surgen de dichos contratos por diversidad de ciudadanía.

[2] Véase además, EBI, Inc. v. Gator Industries, Inc., 807 F.2d 1 (1st Cir. 1986), ("[W]e doubt that the words of the statute can fairly be read to include route or area salesmen who, without making any investment or commitment or taking any risk other than the value of their own time, are permitted to take orders and are paid commissions on orders finally accepted by the principal").

activities essentially involved some promotion and the development of a minor market for defendant's products in Puerto Rico **but no actual control** over the end result of its promotional efforts." Mario R. Franceschini, Inc. v. Riley Co., 591 F. Supp. 414, 415 (D.P.R. 1984) (*énfasis suplido*).[3]

De manera consistente con nuestras opiniones en J. Soler Motors, supra; Medina & Medina, supra; y Roberco, supra; el tribunal federal también se ha negado a extender las protecciones de la Ley Núm. 75 aunque el agente haya expandido sustancialmente el mercado del principal a través de sus gestiones e incurrido en gastos mínimos de oficina, si dicho agente no cuenta con la independencia empresarial suficiente para ser un distribuidor, y no asume los riesgos y responsabilidades del negocio. González v. Brown Group, Inc., 628 F. Supp. 436 (D.P.R. 1985). Tampoco ha sido suficiente para cumplir con este requisito de independencia que el agente tenga cierta discreción en cuanto a los precios a los cuales vende los productos del principal si esta discreción esta limitada por unos precios máximos y mínimos, y si el agente no tiene autoridad para aprobar las órdenes que le envía al principal. Patterson v. Ford Motor Company, 931 F. Supp. 98 (D.P.R. 1996).

Además, el tribunal federal ha enfatizado la diferencia entre promover y **concluir** contratos, basándose correctamente en que nuestra jurisprudencia, al requerir en Córdova, supra, que un agente de seguros tenga autoridad para tanto promover como concluir los contratos, establece una fundamental diferencia entre ambos términos: "To be sure, 'promotion and closing of sales contracts' were highlighted, but 'closing' must mean something more than a facilitating step toward, but short of, finality. Otherwise, the two terms would be telescoped into any effort advancing the final sale of goods and services." EBI, supra, en la pág. 4.

Por último, y a manera de resumen, nos parece importante mencionar y discutir un caso reciente en el cual el Tribunal de Circuito de Apelaciones para el Primer Circuito se enfrentó a una controversia similar a la de autos. En Triangle Trading Co., Inc. v. Robroy Industries, Inc., 200 F.3d 1 (1st Cir. 1999), Triangle vendía los productos de Robroy por una comisión. El agente mantenía una facilidad de oficinas, dedicaba dos empleados a la venta de productos de Robroy, invertía $7,000.00 al año en desarrollar una clientela para dichos productos a través de esfuerzos publicitarios, mantenía un pequeño inventario, y participaba en las gestiones de cobro. Sin embargo, Triangle no compraba los productos para revenderlos, no tenía control sobre los precios, no tenía autoridad para extender crédito, no podía aprobar descuentos ni concesiones, no hacía entrega de los productos ni estaba a cargo de su facturación, no costeaba la literatura publicitaria, y no asumía ningún riesgo financiero más allá de la pérdida de su comisión.

---

[3] Véase además, Morales v. Gregg Shirt Makers, 682 F. Supp. 142 (D.P.R. 1988) (no había suficiente independencia empresarial para que el agente fuera un distribuidor aunque dicho agente aumentó las ventas del principal en un 53%, contrató a dos empleados, gastaba alrededor de $1,000.00 mensuales en el alquiler de un "showroom" y en otros gastos de

Ante estos hechos, el tribunal federal concluyó que, a pesar de que Triangle desarrolló un mercado para los productos de Robroy e hizo una pequeña inversión financiera, "those facts alone are not determinative as they apply to any sales agent or middleman [...] Instead, we are swayed by the facts which demonstrate a lack of the requisite control of the distribution chain." Triangle, supra, en la pág. 5. Aplicando los criterios esbozados por este Tribunal en Roberco, supra, el foro federal resolvió que, por esta subordinación jerárquica, Triangle era un viajante, y que, por lo tanto, no le cobijaban las protecciones de la Ley 75.

Examinada la experiencia de los foros federales en estos casos, procede resolver la controversia ante nos.

V

En el caso de agentes de seguros, en el cual se vende un servicio y no un producto, cobran singular importancia algunos factores específicos de los diez que ya hemos discutido. No se puede decir que un agente de seguros guarda un inventario, ni mantiene un almacén, ni vende piezas de reemplazo. Por lo tanto, es particularmente importante para la determinación de si un agente de seguros es un distribuidor si el mismo tiene autoridad para negociar los términos de la póliza, o si la misma responde a un formulario ya pre-hecho por el asegurador. También es clave si el agente puede concluir y refrendar los contratos sin autorización previa del principal. En una situación como la de autos tiene mucho peso si el agente hace gestiones de promoción sustanciales, o si sólo se dedica a hacer llamadas y conseguir solicitudes de seguros de clientes prospectivos. Este segundo tipo de actividad, propia de un vendedor, es la médula misma de las funciones de un viajante, y no es suficiente para convertir a un agente en distribuidor.

En el caso de los proveedores de servicios también es sumamente importante considerar cuánto se ha invertido en facilidades físicas para la gestión de venta, y si los agentes conceden crédito a los clientes, pues esto es indicativo de si los mismos han asumido algún riesgo o responsabilidad sustancial por el negocio.

Surge del expediente que Lorenzana y Advisory se dedicaban a conseguir clientela y promover contratos de seguro entre estos clientes y General. A estos efectos, los recurridos tenían facilidades de oficina en donde General instaló varios terminales de computadoras. A través de dichas computadoras, los agentes le enviaban a General toda la información sobre los potenciales clientes. Posteriormente, el caso era analizado por General y, si era aprobado, la aseguradora emitía una póliza que digitalmente se remitía a Puerto Rico para su impresión en la oficina de Advisory.

De estos hechos se desprende que, aunque los agentes en este caso promovían contratos de seguro, éstos no tenían autoridad para **concluir** dichos contratos. Esta es una diferencia fundamental entre el caso de autos y los casos de agentes de seguros que hemos resuelto

"overhead", participaba en "trade shows", distribuía "flyers" anunciando el producto, y

anteriormente, Córdova, supra, y Oliveras, supra. Aunque este factor no es necesariamente determinante, sí hace que la situación de autos sea distinguible. Véase, EBI, supra. Por tanto, a diferencia de los agentes en Córdova, supra, y Oliveras, supra, los recurridos no cumplen sustancialmente con un importantísimo criterio de la definición de distribuidor.

Además, surge del expediente que los recurridos no ejercían control sobre los términos de los contratos; no emitían pólizas, endosos, aditamentos o resguardos; no podían cancelar ni renovar pólizas; no tenían derecho a recibir primas a su nombre ni depositarlas a su cuenta; no podían nombrar agentes de seguros; no tenían autoridad para conceder crédito; y no asumían el riesgo ni la responsabilidad en la gestión realizada. Además, la única actividad "publicitaria" que llevaban a cabo los recurridos era conseguir clientes potenciales y ofrecerles pólizas de seguro. Si bien es cierto que este tipo de actividad de venta puede ayudar a expandir el mercado de un producto, también queda claro de la jurisprudencia previamente discutida, que esto, por sí solo, no convierte a un agente en distribuidor. Cobos Liccia, supra; Franceschini, supra; Morales, supra; EBI, supra; Triangle, supra.

Este no es el tipo de actividad de promoción a la cual se refiere nuestro análisis. Un distribuidor normalmente debe hacer más que las escasas gestiones de un vendedor o un viajante. Un distribuidor, por lo general, compra anuncios en la prensa y los medios de comunicación, participa en "trade shows", y organiza actividades y demostraciones. Los recurridos no cumplen tampoco con este criterio de la definición.

Por otro lado, los demandantes en este caso mantienen una oficina, y participan en la entrega de las pólizas. Como surge de los casos discutidos anteriormente, la Ley Núm. 75 requiere más independencia empresarial para que un agente reciba el beneficio de sus protecciones. González, supra; Morales, supra; EBI, supra; Triangle, supra. El mantener una oficina no implica que el agente haya asumido los riesgos y responsabilidades del negocio de la venta de seguros. González, supra; Morales, supra. De igual manera, el entregar las pólizas, exclusivamente como intermediario entre el principal y el cliente, no elimina el elemento inequívoco de subordinación jerárquica que está presente en la relación entre las partes. Cobos Liccia, supra.

Entendemos que la situación de hechos de autos es indistinguible de las situaciones discutidas previamente, en las que este Tribunal, y los tribunales federales, han excluido a agentes de la cobertura de la Ley Núm. 75 por constituir, esencialmente, viajantes comisionistas. En el caso específico de estos agentes de seguros, el principal no le proveyó la autoridad necesaria para que éstos gozaran de la independencia empresarial que convierte a un agente en distribuidor. Aunque el Código de Seguros sí permite que un asegurador le delegue mayor poder a sus agentes, las peticionarias no lo hicieron en el caso de autos. Los recurridos no podían ni negociar ni concluir los contratos, y no asumían mayor riesgo

hasta logró incluir el producto en anuncios comparativos en varias ocasiones).

que el de la pérdida de su tiempo y sus gastos de oficina. Los recurridos sólo se dedicaban a colocar pólizas con el asegurador que les pagara las mejores comisiones. No existía, pues, la "continuidad, estabilidad, confianza mutua [y] coordinación entre ambas partes en calidad de empresarios independientes, sin subordinación jerárquica" que caracteriza un contrato de distribución. J. Soler Motors, supra. Por lo tanto concluimos que la Ley Núm. 75 no es aplicable al caso de autos.

VI

Ausente la protección de la Ley Núm. 75, los recurridos sólo tienen derecho a entablar una reclamación basada en cualquier arreglo contractual entre ellos y General. Surge del expediente que no existió mayor contrato entre las partes que un acuerdo mediante el cual los recurridos le gestionaban contratos de seguro a General a cambio de unas comisiones especificadas. Dicho acuerdo no establecía la duración de dicha relación contractual. Un contrato de servicio sin término fijo de duración puede ser terminado por cualquiera de los contratantes. Figueroa Piñero v. Miranda & Eguía, 83 D.P.R. 554 (1961). Por lo tanto, General estaba en libertad de terminar la relación contractual con Lorenzana y Advisory sin que mediara justa causa.

VII

Por todos los fundamentos antes expuestos, resolvemos que Lorenzana y Advisory no eran distribuidores de las pólizas de seguro de General para efectos de la Ley Núm. 75. General podía, pues, terminar el acuerdo de comisiones entre las partes sin que mediara justa causa. Por lo tanto, procede revocar la Sentencia del Tribunal de Circuito de Apelaciones y desestimar la demanda.

Se dictará la Sentencia correspondiente.


Federico Hernández Denton
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Israel Lorenzana Torres
y Otros

  Demandantes-Recurridos

  v.                                CC-2000-3          Certiorari

General Accident Insurance
Company; General Accident
Insurance Agency

  Demandadas-Peticionarias

SENTENCIA

San Juan, Puerto Rico, a 29 de junio de 2001.

      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se revoca la Sentencia del Tribunal de Circuito de Apelaciones y se desestima la demanda.

      Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.  La Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Fuster Berlingeri concurrieron sin opinión escrita.  El Juez Asociado señor Corrada del Río, inhibido.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo