La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
El presente caso nos brinda la oportunidad de delimitar el ámbito de aplicación de la Ley Núm. 21 de 5 de diciem- *533 bre de 1990, Ley sobre Contratos de Representantes de Ventas (Ley Núm. 21), 10 L.P.R.A. sec. 279 et seq.
r — ¶
A. Las partes en este caso disputan si el demandante peticionario, el señor Wilfredo Cruz Marcano (señor Cruz Marcano), sostuvo una relación de principal-representante de ventas con los demandados recurridos, la señora Brenda Ramos Ortiz y el señor Rafael Sánchez Tarazona. En vista de que el Tribunal de Primera Instancia resolvió este caso mediante el mecanismo de sentencia sumaria, expondre-mos los hechos pertinentes según aparecen consignados en las determinaciones de hechos del foro primario, las esti-pulaciones de las partes y las transcripciones de las depo-siciones que obran en autos.
B. Los recurridos operan un negocio de manufactura, impresión y venta de ropa bajo el nombre Artee Designers. En el 1994, el demandante peticionario comenzó a fungir como vendedor de ciertas líneas de ropa (camisas y panta-lones) que los demandados recurridos manufacturan. Sin embargo, las partes no otorgaron un contrato escrito que recogiera los términos de su relación comercial. Según los términos del acuerdo verbal de las partes, el señor Cruz Marcano recibía una comisión de 5% por cada venta. Véase Apéndice de la Solicitud de certiorari, pág. 130.
El 9 de noviembre de 1998, el señor Cruz Marcano pre-sentó una demanda y solicitud de interdicto provisional contra la señora Ramos Ortiz y el señor Sánchez Tarazona. Reclamó la indemnización provista por la Ley Núm. 21, en caso de que un principal termine sin justa causa el con-trato de un representante de ventas. En su demanda, alegó que durante el mes de octubre de 1998 los demandados recurridos le notificaron su decisión de prescindir de sus *534 servicios como representante exclusivo de varias de líneas de ropa, incluso la línea denominada Mano Sport.
Celebrada la vista de interdicto, el Tribunal de Primera Instancia denegó este remedio y ordenó la continuación de los procedimientos por la vía ordinaria. Luego de una serie de trámites procesales, los demandados recurridos presen-taron una moción de desestimación y, posteriormente, una moción de sentencia sumaria. El 30 de agosto de 1999, el Tribunal de Primera Instancia denegó ambas solicitudes.
Posteriormente, los demandados recurridos presentaron una segunda moción de sentencia sumaria el 24 de abril de 2002. Alegaron que no existía controversia en torno a que el señor Cruz Marcano no era un representante de ventas según la definición de la Ley Núm. 21, por lo que no tenía una causa de acción bajo dicho estatuto. Por su parte, el demandante peticionario presentó su oposición a la moción de sentencia sumaria de los demandados y solicitó que el tribunal dictara sentencia sumaria a su favor.
Así las cosas, el 30 de agosto de 2004, el Tribunal de Primera Instancia dictó una escueta orden —notificada el 7 de septiembre de 2004— en la que declaró “ha lugar” la moción de sentencia sumaria presentada por los demanda-dos recurridos. Ante ello, el demandante peticionario soli-citó que el tribunal de instancia aclarase su orden. El 28 de octubre de 2004, el tribunal dictó una segunda orden en la cual señaló una audiencia en su fondo. Sin embargo, el 28 de junio de 2005 dictó sentencia sumaria desestimando la demanda.
En síntesis, el foro primario determinó que los siguien-tes hechos no estaban en controversia: las partes no otor-garon un contrato escrito; según el acuerdo de las partes, el demandante gestionaba órdenes de venta de la mercancía de los demandados a cambio de una comisión de 5% que el demandante cobraba cuando los demandados manufactu-raran y entregaran la mercancía; el demandante no com- *535 praba los productos para revenderlos, no mantenía un in-ventario de la mercancía, no tenía empleados ni instalaciones de almacén; de ordinario no tenía la respon-sabilidad de cobrar la mercancía que vendía, no se encar-gaba de la entrega de mercancía ni de los costos de acarreo; no controlaba los precios o las ventas a crédito, y no res-pondía por devoluciones de mercancía, asunto que era res-ponsabilidad de los demandados.
Por otra parte, según estableció el tribunal de instancia, los demandados recurridos aprobaban las ventas a crédito o plazos, aprobaban los pactos de venta, controlaban los precios y la producción, eran los dueños del inventario y de la maquinaria de producción y sufragaban los costos de entrega de mercancía, de promoción de la mercancía y los gastos de viajes al exterior relacionados con el negocio. Fi-nalmente, el tribunal determinó que no estaba en contro-versia que Artee Designers tenía otros vendedores, mante-nía clientes propios y que el demandante no atendía a todos los clientes de la demandada. Véase Apéndice de la Solicitud de certiorari, págs. 129-131.
A la luz de los hechos antes detallados, el Tribunal de Primera Instancia concluyó que el señor Cruz Marcano no era un representante de ventas protegido por la Ley Núm. 21. Como cuestión de derecho, aplicó los criterios que adop-táramos en Roberco, Inc. y Colón v. Oxford Inds., Inc., 122 D.P.R. 115 (1998), al amparo de la protección que la Ley Núm. 75 de 24 de junio de 1964 (10 L.P.R.A. sec. 278 et seq.) provee en caso de la terminación sin justa causa de un contrato de distribución. El foro primario entendió que la Ley Núm. 21 es una “variante” de la Ley Núm. 75 y equi-paró ambas figuras, DISTRIBUIDOR y representante de ventas. A raíz de ello, concluyó que el demandante no era un representante de ventas, puesto que no controlaba los precios ni las condiciones de venta, no asumía riesgos co-merciales, no asumía los gastos de producción o de entrega de la mercancía, no compraba la mercancía y no mantenía *536 las instalaciones para su operación. Además, determinó que el demandante peticionario no era el único vendedor ni atendía a todos los clientes de los demandados recurridos, por lo que no era un representante exclusivo de los deman-dados, rasgo necesario para ser acreedor de la protección provista por la Ley Núm. 21.
Inconforme, el demandante peticionario recurrió al Tribunal de Apelaciones. Dicho foro apelativo intermedio con-firmó la determinación recurrida. Adujo que no existían controversias de hechos que impidieran dictar sentencia sumaria y que el demandante no detalló adecuadamente los hechos que estimaba estaban en controversia, ya que se limitó a argumentar la cuestión de derecho, a saber, si era un representante de ventas protegido por la Ley Núm. 21.
El Tribunal de Apelaciones concluyó que las circunstan-cias del caso indicaban que el demandante no era un repre-sentante de ventas, puesto que no asumió los gastos aso-ciados a la labor de crear un mercado para los demandados mediante gestiones de venta, promoción y mercadeo de la mercancía que vendía. Resaltó que el demandante no incu-rría en gastos relacionados con la operación de una oficina y un salón de exhibiciones ni en gastos de viajes, represen-tación, muestrarios y patentes municipales. Más aún, el Tribunal de Apelaciones entendió que el demandante era un vendedor a comisión o viajante comisionista que, según dicho tribunal, no goza de protección bajo la Ley Núm. 21.
Oportunamente, el demandante peticionario presentó un recurso de certiorari ante este Foro. En esencia, cues-tiona la determinación del foro apelado sobre la ausencia de controversias de hechos. Además, arguye que erró el foro apelativo intermedio al aplicar al representante de ventas las características que distinguen a un distribuidor.
El 31 de marzo de 2006 expedimos el auto. Con el bene-ficio de la comparecencia de las partes, procedemos a resolver la controversia que nos ocupa.
*537 I — I
Esta es la primera ocasión en que analizamos las dispo-siciones de la Ley Núm. 21 sobre los contratos de represen-tantes de ventas. Dicho ejercicio de interpretación requiere precisar los rasgos distintivos de diversos intermediarios comerciales que colaboran con un principal en la consecu-ción de los fines de su empresa. Específicamente, debemos perfilar las diferencias entre dos intermediarios o colabo-radores comerciales tutelados en nuestro ordenamiento: el representante de ventas y el distribuidor de mercancías o servicios. Ambos participan en las actividades comerciales de intermediación entre el productor de una mercancía y el consumidor, y reciben la protección estatutaria frente al cese unilateral de sus contratos: el distribuidor, mediante la Ley Núm. 75, y el representante de ventas, mediante la Ley Núm. 21.
A. “En el ejercicio y desarrollo de la empresa, cuales-quiera que sean las ambiciones y dimensiones de ésta, ne-cesita valerse el empresario del concurso de otras personas que le ayuden a conseguir los fines previstos.” R. Uría, De-recho Mercantil, 12ma ed., Madrid, Imprenta Aguirre, 1982, pág. 45. Así, el empresario se rodea de auxiliares(1) o intermediarios que colaboran en el proceso de colocar una mercancía o servicio en el mercado.
En virtud del desarrollo polifacético de las relaciones comerciales, podemos identificar diversos tipos de acuerdos mercantiles entre un principal y un auxiliar o intermediario. En general, se trata de contratos cuyo fin es *538 ampliar el mercado y la clientela de los productos de un principal. Véase E. Chuliá Vicent y T. Beltrán Alandete, Aspectos jurídicos de los contratos atípicos, España, Ed. Bosch, 1995, Vol. 2, Cap. II, pág. 333 y Cap. III, pág. 379. Como ejemplos de ellos podemos identificar el contrato de distribución y de representante de ventas (agencia).
B. Existe consenso en la doctrina mercantil en torno a las características básicas de la figura del agente y del contrato mercantil que le da vida a su función de intermediario comercial. El “contrato de agencia es aquel por el cual un empresario de manera permanente, mediante una remuneración y con una cierta independencia, asume el cargo de preparar o realizar contratos mercantiles por cuenta de otro empresario”. F. Sánchez Calero, Instituciones de Derecho Mercantil, 9na ed., Madrid, Ed. Rev. Der. Privado, 1982, pág. 378. Según la referida doctrina, el contrato de agencia se concreta entre dos empresarios independientes y engendra un vínculo comercial continuo y es-table en el cual el “agente es titular de su propia empresa y la prestación de su trabajo no se realiza de modo subordinado”. Uría, op. cit., pág. 555. Véanse, además: Id., págs. 378-379; Garrigues, Curso de Derecho Mercantil, 7ma ed., Madrid, 1976, págs. 120-124; A. Estrella, El contrato de agencia o representación comercial: naturaleza de la relación; la terminación del contrato, 31 Rev. C. Abo. P.R. 241 (1970).
Según indica Rodrigo Uría, generalmente, la compensación del agente “consiste en un porcentaje sobre el importe de las operaciones que realice”. Uría, op. cit., pág. 556. Además, en este tipo de contrato, es de uso común que el principal le asigne una zona territorial al agente junto a una concesión de exclusividad que se puede configurar a favor del agente o del principal. íd., pág. 557.
Por otro lado, el comentarista Joaquín Garrigues pos-tula que el elemento de organización es decisivo para con-siderar a una persona como agente. J. Garrigues, Tratado *539 de Derecho Mercantil, Madrid, Ed. Revista de Derecho Mercantil, 1963, T. Ill, Vol. 1, págs. 540-541. Sobre ello indica que
[e]sta organización [del agente] puede ser muy primitiva (pue-de consistir, por ejemplo en la instalación de una pequeña ofi-cina unida a veces a la propia vivienda del agente, o incluso tan sólo la colocación en la puerta de su domicilio de una placa indicativa de la profesión) o, por el contrario, constituir una organización más compleja (así ocurre cuando existen locales de exposición, organización de ventas con personal auxiliar propio, propaganda propia y clientela propia que confía sus encargos siempre al mismo agente). Garrigues, Tratado de De-recho Mercantil, op. cit., pág. 541. Véase, además, Estrella, supra, pág. 246.
En Roberco, Inc. y Colón v. Oxford Inds., Inc., supra, pág. 123, aclaramos que los contratos de distribución y de agencia comparten ciertas características, puesto que “ambas son contratos entre empresarios mercantiles independientes, de continuidad o duración fija o indeterminada [y, m]ediante los mismos se impone [n] al distribuidor o agente obligaciones de amplia y extensa actividad de promoción y venta”.(2)
Nuestro Código de Comercio no regula el contrato de agencia. Ello lo convierte en un contrato atípico para el Código de Comercio.(3) Sin embargo, como vere- *540 mos, la Ley Núm. 21 regula de forma esquemática un tipo de contrato de agencia: el contrato de representante de ventas. Por otro lado, la Ley Núm. 75 reglamenta los con-tornos básicos del contrato de distribución, el cual, como indicamos, comparte ciertas características con el contrato de agencia.
I — I HH I — I
Es norma reiterada que la Ley Núm. 75 crea una causa de acción a favor de un distribuidor frente a la terminación de su contrato sin justa causa. B.W.A.C. Int’l v. Quasar Co., 138 D.P.R. 60 (1995). En varias ocasiones he-mos examinado la figura del distribuidor para distinguirlo de otros intermediarios comerciales que no gozan de protección bajo la Ley Núm. 75. Véanse Lorenzana v. Gen. Accid. Ins. Co., 154 D.P.R. 547 (2001); Oliveras, Inc. v. Universal Ins. Co., 141 D.P.R. 900 (1996); Cobos Liccia v. DeJean Packing Co., Inc., 124 D.P.R. 896 (1989); Roberco, Inc. y Colón v. Oxford Inds., Inc., supra; Medina & Medina v. Country Pride Foods, 122 D.P.R. 172 (1988); Pacheco v. Nat’l Western Life Ins. Co., 122 D.P.R. 55 (1988); Córdova & Simonpietri v. Crown American, 112 D.P.R. 797 (1982); San Juan Merc. v. Canadian Transport Co., 108 D.P.R. 211 (1971). J. Soler Motors v. Kaiser Jeep Int’l, 108 D.P.R. 134 (1978).
En dicha trayectoria jurisprudencial hemos aclarado que un distribuidor es “un empresario mercantil indepen-diente que ha establecido una relación de continuidad y duración fija o indeterminada, con otro empresario principal para la distribución de un producto o servicio”. (Escolio omitido.) Roberco, Inc. y Colón v. Oxford Inds., Inc., supra, pág. 131. Ello con el propósito de crear un mercado para el principal y atraer nueva clientela para su producto o servicios. Véase Lorenzana v. Gen. Accid. Ins. Co., supra, pág. 553.
*541 Para delinear los rasgos que distinguen al distribuidor de otros intermediarios del comercio que no gozan de la protección provista por la Ley Núm. 75, establecimos en Roberco, Inc. y Colón v. Oxford, Inds., Inc., supra, que es menester examinar si éste: (1) promueve y concluye contratos; (2) adquiere inventario; (3) ejerce control sobre los precios; (4) tiene discreción en cuanto a pactar los términos de las ventas; (5) tiene responsabilidad por la entrega y cobro de la mercancía o servicio; (6) tiene autoridad para conceder crédito; (7) lleva a cabo gestiones, independientes o conjuntas, de publicidad; (8) ha asumido el riesgo y responsabilidad en la gestión que realiza; (9) compra el producto, y (10) tiene facilidades físicas y ofrece servicios relacionados con el producto a sus clientes. Roberco, Inc. y Colón v. Oxford Inds., Inc., supra, págs. 131-32. Véase, además, Lorenzana v. Gen. Accid., supra, pág. 555.
Tomando en cuenta la conjunción de los criterios antes mencionados, hemos enfatizado que la Ley núm. 75 protege al distribuidor por la creación del mercado y la conquista de clientela mediante esfuerzos de publicidad, entregas, mercadeo, cobros, promoción y mantenimiento de inventario. Véase San Juan Merc. v. Canadian Transport Co., supra, pág. 215. Sin embargo, también hemos aclarado que no fue la intención del legislador extender la protección de la Ley Núm. 75 a todo intermediario del comercio. Roberco, Inc. y Colón v. Oxford Inds., Inc., supra, pág. 131. Conforme a ello, indicamos en Roberco que para considerar al “auxiliar ... como ‘distribuidor’ no basta un mero contacto con el producto en el camino de éste pasar del fabricante o suplidor al consumidor; hace falta algo más”. Íd.
En Roberco, Inc. y Colón v. Oxford Inds., Inc., supra, analizamos la figura mercantil del viajante, intermediario cuya labor es “ ‘ensanchar constantemente el círculo de operaciones de la empresa, conservando, renovando y *542 aumentando en lo posible la clientela’ ”. (Énfasis suprimido.) Íd., págs. 128-129, citando a Uría, op. cit., lima ed., 1976, pág. 52. Al distinguir entre el distribuidor y el viajante, concluimos que este último no gozaba de pro-tección bajo la Ley Núm. 75, puesto que no asume el mismo riesgo comercial de un distribuidor y no “incurre en los gastos e inversiones que normalmente acarrea la distribu-ción de un producto o servicio”. Íd., pág. 130. Véase, ade-más, Lorenzana v. Gen. Accid. Ins. Co., supra, pág. 555.(4)
En fin, en el pasado hemos esbozado las diferencias en-tre un viajante y un distribuidor para concretar el ámbito de aplicación de la Ley Núm. 75, estatuto que protege a los distribuidores y no a otros tipos de intermediarios. Por lo tanto, hasta el 1990 existió un laguna estatuaria que tuvo el efecto de negarle protección a ciertos intermediarios co-merciales, tales como los representantes de ventas o, como los denominamos en Roberco, Inc. y Colón v. Oxford, Inds., Inc., supra, “viajantes independientes”.
IV
A. Siendo consciente de nuestros pronunciamientos sobre las características del distribuidor al amparo de la Ley Núm. 75, el legislador puertorriqueño aprobó la Ley Núm. 21 con “el propósito de hacer justicia ... [al] representante de ventas ...”. Exposición de Motivos de la Ley Núm. 21 de 5 de diciembre de 1990 (Ley Núm. *543 21), 1990 (Parte 2) Leyes de Puerto Rico 1483. A través de dicho estatuto, el legislador extendió a los representantes de ventas una protección análoga a la que los distribuido-res poseen bajo la Ley Núm. 75. La Exposición de Motivos de la Ley Núm. 21, supra, plasma sin ambages los propó-sitos que dicho estatuto persigue:
A tenor con lo establecido en el caso ... Roberco Colón y Oxford Industries, Inc.; 88 J.T.S. 102 (1988), la Ley Núm. 75 ... que reglamenta los contratos de distribución, no cubre a los representantes de ventas. Estos intermediarios del comercio no tienen en la actualidad protección legal alguna....
A pesar de todo el servicio que el representante de ventas rinde al principal, el primero no recibe otra compensación que no sea una comisión, sobre la cual no ejerce ningún control; está expuesto a que sin justa causa le cesen una línea de re-presentación y finalmente está expuesto, por razón de su tra-bajo que requiere su intervención directa y constante, a acci-dentes o enfermedades prolongadas que afecten las ventas y que eventualmente provoque su remoción como representante, sin compensación alguna.
La presente ley tiene el propósito de hacer justicia a ese agente comercial que es el representante de ventas, ofrecién-dole medidas de protección cónsonas con la importancia de su gestión. (Escolio omitido.) íd., págs. 1482-1483.
Preocupado por los “casos en que empresas domésticas o extranjeras, sin causa justificada, eliminan los represen-tantes de fábrica, empresarios mercantiles independientes del principal, tan pronto éstos han creado un mercado favorable y han conquistado una clientela” (Informe del P. del S. 793 de 1 de julio de 1990, 3ra Sesión Ordinaria, lima Asamblea Legislativa, pág. 13), el legislador aprobó la Ley Núm. 21 como una medida de protección para los representantes de ventas que no gozaban de protección al-guna bajo la Ley Núm. 75. De esta forma, le extendió a otro intermediario del comercio una protección en caso de la cancelación de su contrato sin justa causa.
A grandes rasgos, la Ley Núm. 21 prohíbe que un principal dé por terminada la relación comercial con su representante de ventas o que realice actos que la menos- *544 cabe sin tener una justa causa para ello. 10 L.P.R.A. see. 279a. Además, provee para el pago de daños al represen-tante de ventas en todo caso en el que no haya mediado justa causa para el cese o menoscabo de la relación. 10 L.P.R.A. sec. 279b-c. Sin embargo, al igual que ocurre con la Ley Núm. 75, la Ley Núm. 21 provee una definición esquemática sobre los términos representante de ventas y contrato de representante de ventas, y no delimita los ele-mentos distintivos de este tipo de agente. 10 L.P.R.A. sec. 279. Por lo tanto, nos corresponde concretar su significado.
B. Según la Ley Núm. 21, el representante de ventas es un “[e]mpresario independiente que[,] con carácter de exclusividad[,] establece un contrato de representación de ventas con un principal o concedente, concediéndole un territorio o mercado definido!,] dentro del Estado Libre Asociado de Puerto Rico. Incluye la figura conocida como representante de fábrica”. (Enfasis nuestro.) 10 L.P.R.A. sec. 279(a). Por otra parte, la Ley Núm. 21 define contrato de representante de ventas como
[e]l convenio establecido entre un representante de ventas y un principal [,] mediante el cual e independientemente de la forma en que las partes denominen, caractericen o formalicen dicho convenio, el primero se compromete a realizar un es-fuerzo razonable y la debida diligencia en la creación o expan-sión de un mercado favorable para los productos que vende el principal dirigido a conquistar clientela para ofrecerle un pro-ducto o servicio mercadeado por él en Puerto Rico y el segundo se obliga a cumplir con los compromisos resultantes del es-fuerzo y coordinación del representante de ventas y al pago de una comisión o remuneración previamente pactada. 10 L.P.R.A. sec. 279(c).
Acorde con las definiciones de la Ley Núm. 21, el representante de ventas es un agente que, con carácter de exclusividad, promueve y tramita contratos a favor de su principal para ampliar el mercado y la clientela del principal. Así, el representante de ventas se encarga de *545 persuadir al cliente para que concluya un contrato. Sin embargo, las definiciones esquemáticas de la ley no nos per-miten determinar con claridad quiénes deben calificar como representantes de ventas y cuáles son las implicacio-nes del requisito de exclusividad. Por lo tanto, debemos recurrir al historial legislativo de la medida para identifi-car los elementos que el legislador consideró distinguen a esta figura de otros intermediarios del comercio, como el distribuidor.
En primer lugar, en la Exposición de Motivos de la Ley Núm. 21 el legislador ejemplificó los gastos comúnmente asociados a un representante de ventas. Estos son: gastos de “oficina, salón de exhibición, automóvil, personal de oficina, teléfono, electricidad y agua, seguros (médico, de vida, social), gastos de viaje, gastos de representación, pago de muestrarios, materiales de oficina y patentes municipales”. Exposición de Motivos de la Ley Núm. 21, supra, pág. 1482. Además, dicha Exposición de Motivos resalta que, a pesar de que la labor de representante de ventas conlleva una serie de gastos operacionales, éste “no controla ninguna de las variantes comerciales para realizar el negocio que le asignan sus principales, como por ejemplo ... devoluciones de mercancía, cuotas, cuentas y territorio” (id.) ni “controla el derecho de vender, negociar o ceder sus líneas, ni por sucesión, retiro o muerte”. Id.
En segundo lugar, el Informe del Proyecto del Senado 793 indica que el representante de ventas “ejerce una indus-tria independiente coordinada a la del comerciante”, por lo que no existe una subordinación jerárquica. Informe del P. del S. 793, supra, pág. 12. “[E]s el dueño de su negocio y lo organiza en forma tal que queda libre para establecer rela-ciones con otros empresarios principales y aunque éstos cambien, la organización propia del representante permanece.” Id. En virtud de este contrato, “se establece ... una relación de continuidad ... [y] el representante [realiza] *546 una inversión de capital o esfuerzo ... dirigidla] a conquis-tar clientela y servirle bien” al principal. Id.
Como vemos, el representante de ventas, protegido por la Ley Núm. 21, mantiene un contrato de agencia con el principal. En esta relación comercial utiliza su conocimiento y experiencia para promover los productos del principal y tramitar órdenes a su favor. Al igual que el distribuidor, es un empresario independiente cuya labor persigue aumentar el mercado y la clientela del principal. Sin embargo, mientras el distribuidor usualmente adquiere y mantiene un inventario, controla los precios de los productos que vende y de ese precio obtiene su ganancia, concede créditos, compra el producto, entrega y cobra la mercancía, realiza esfuerzos extensos de publicidad, asume el riesgo de su gestión, tiene facilidades y ofrece servicios relacionados con el producto, la función del representante de ventas es un tanto más limitada.
El representante de ventas tramita contratos u órdenes a nombre del principal a cambio de una comisión y no asume el riesgo en caso de que el cliente no pague. Su gestión no le requiere comprar el producto ni mantener facilidades de almacenaje, pues usualmente remite las órdenes de compra al principal para que éste la entregue al cliente.(5) Véase A. M. Saltoun y B. C. Spudis, International Distribution and Sales Agency Agreements: Practical Guidelines for U.S. Exporters, 38 Bus. Law. 883 (1983). Por lo tanto, no compete al representante de ventas asumir los gastos de adquisición, entrega o almacenaje de mercancía, características asociadas al distribuidor.
*547 Como bien refleja la Exposición de Motivos de la Ley Núm. 21, los representantes de ventas incurren en ciertos gastos operacionales que, en conjunto, abonan a la presen-cia de la independencia empresarial característica de este tipo de agente. A modo de ejemplo, el representante de ven-tas puede incurrir en gastos de oficina, personal de oficina, gastos de viajes, seguros, automóvil y patentes municipales. Empero, esta lista no contiene todos los gas-tos en los que puede incurrir un representante de ventas; tampoco pretende ser una enumeración taxativa de los re-quisitos con los que debe cumplir un intermediario del co-mercio para ser acreedor de la protección de la Ley Núm. 21.
Es menester resaltar que los gastos operacionales de un representante de ventas varían dependiendo de la naturaleza de su organización, del tipo de producto que promueve y de los compromisos contractuales que mantenga con el principal. Es por ello que sus gastos serán distintos a los de un distribuidor. Así, mientras el distribuidor invierte en campañas publicitarias en los medios de comunicación —véase Lorenzana v. Gen. Accid. Ins. Co., supra, pág. 564— los gastos de promoción del representante de ventas se circunscriben, de ordinario, a la interacción con los clientes en sus establecimientos.
En fin, al clasificar a un intermediario comercial como representante de ventas, debemos examinar si se trata de un comerciante independiente que posee una organización comercial propia, ya sea compleja o sencilla. Se podrá exa-minar como guía el tipo de remuneración que percibe, los diversos gastos que su actividad comercial conlleva, el modo de operación y organización, y la libertad que posea para regir su actividad comercial.
Por otro lado, la Ley Núm. 21 exige que el representante de ventas ejerza su función con carácter de exclusividad. Sin embargo, la ley no define los contornos de la exclusividad ni surge del historial legislativo de ésta los *548 criterios concretos que el legislador consideró al incluir dicho requisitos. El diccionario de la Real Academia Española define el término exclusivo como un “[p]rivilegio o derecho en virtud del cual una persona o corporación puede hacer algo prohibido a las demás”. Diccionario de la Lengua Espa-ñola, 22ma ed., Madrid, Ed. Espasa-Calpe, 2001, T. I, pág. 1016. Además, una agencia exclusiva “se caracteriza por el hecho de que el agente puede impedir que el empresario representado realice operaciones en la zona reservada a aquél, bien se trate de operaciones realizadas personal-mente por el empresario, o bien de operaciones realizadas a través de sus auxiliares o de otros agentes”. Garrigues, Tra-tado de Derecho Mercantil, op. cit., pág. 567. Por lo tanto, en el supuesto de un contrato de representante de ventas cobi-jado por la Ley Núm. 21, el principal no puede por cuenta propia o a través de un tercero realizar los mismos trabajos que le ha conferido al agente; es decir, no podría operar en el territorio o mercado del agente.
A la luz de lo anterior, somos del criterio que el representante de ventas que goza de protección bajo la ley Núm. 21 es precisamente el agente que en el pasado indicamos que carecía de protección bajo la Ley Núm. 75. Por lo tanto, será representante de ventas aquel intermediario comercial que: (1) promueva y tramite de forma exclusiva contratos a nombre de un principal de forma continua y estable; (2) opere en un territorio o mercado definido; (3) tenga a su cargo la labor de crear o expandir el mercado de los productos del principal mediante esfuerzos de promoción; (4) perciba una comisión por sus servicios o una remuneración previamente pactada,(6) y (5) posea independencia empresarial y una organización propia cuya complejidad dependerá del tipo de relación comercial que *549 establezca con el principal y de la naturaleza del producto que representa.
Finalmente, debemos aclarar que el representante de ventas tutelado por la Ley Núm. 21 no controla el precio del producto; de ordinario, no invierte en la promoción de la mercancía más allá de sus propios esfuerzos dirigidos a vender el producto, no es responsable de la entrega o distribución de la mercancía, no tiene control sobre las devoluciones de mercancía y el manejo de cuentas o ventas a crédito, y no tiene potestad de vender o ceder las líneas o mercancías que representa.
V
En el presente caso, el Tribunal de Primera Instancia desestimó sumariamente la demanda. Entendió que el de-mandante no era un representante de ventas protegido por la Ley Núm. 21, ya que no controlaba los precios ni las condiciones de venta, no asumía riesgos comerciales, no asumía los gastos de producción o de entrega de la mercan-cía, no compraba la mercancía, no mantenía instalaciones para su operación y no era un representante exclusivo de los demandados. El Tribunal de Apelaciones confirmó dicha determinación y entendió que no existían controver-sias de hechos que impidieran desestimar sumariamente la demanda. Por lo tanto, nos corresponde examinar si existen controversias de hechos que impidan dictar senten-cia sumaria en este caso.
Como es sabido, la sentencia sumaria es un mecanismo procesal que confiere discreción al juzgador para dictar sentencia sin necesidad de celebrar una vista evidenciaría. Pérez v. El Vocero de P.R., 149 D.P.R. 427 (1999). El principio rector que debe guiar al juzgador en la determinación sobre si procede o no la sentencia sumaria es el sabio discernimiento, ya que mal utilizada, puede prestarse para privar a un litigante de su “día en corte”, prin- *550 cipio elemental del debido proceso de ley. Roig Com. Bank v. Rosario Cirino, 126 D.P.R. 613 (1990).
Para que proceda resolver un caso sumariamente, el promovente deberá demostrar: (1) que no hay controversia esencial en cuanto a los hechos y (2) que, como cuestión de derecho, procede dictar sentencia sumariamente. Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. En virtud de ello, el tribunal debe examinar si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, surge que no hay controversia real sustancial en cuanto a ningún hecho, por lo que sólo resta resolver una controversia de derecho. íd.
No empece lo anterior, hemos establecido que no procede resolver un caso por la vía sumaria cuando el tribunal no tiene certeza sobre todos los hechos pertinentes de la controversia. Sucn. Maldonado v. Sucn. Maldonado, 166 D.P.R. 154 (2005); Mgmt. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. 599, 610 (2000). Toda duda en cuanto a la existencia de una controversia debe resolverse contra la parte que solicita la sentencia sumaria. Vera v. Dr. Bravo, 161 D.P.R. 308 (2004). En virtud de ello, al determinar si existen controversias de hechos que impiden dictar una sentencia sumaria, el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal. Sucn. Maldonado v. Sucn. Maldonado, supra; Vera v. Dr. Bravo, supra.
La parte promovente de una solicitud de sentencia sumaria tiene la obligación de demostrar la inexistencia de una controversia real sobre todo hecho material esencial, mientras que la parte promovida está obligada a contestar la solicitud de forma detallada. Véanse: Vera v. Dr. Bravo, supra; Audiovisual Lang v. Sist. Est. Natal *551 Hnos., 144 D.P.R. 563, 576 (1997). No obstante, el sólo he-cho de que la parte promovida no presente evidencia que controvierta la presentada por la parte promovente no im-plica que la sentencia sumaria procederá automática-mente. Vera v. Dr. Bravo, supra; Jusino et als. v. Walgreens, 155 D.P.R. 560 (2001).
Un estudio de los documentos que obran en autos, inclu-yendo las estipulaciones de las partes, las transcripciones de las deposiciones y la transcripción de la vista de inter-dicto preliminar celebrada en el caso, nos convence de que existen controversias de hechos que impiden determinar por la vía sumaria si el demandante cumple con los requi-sitos que indicamos debe poseer un representante de ventas. Veamos.
En el presente caso, no existe controversia en torno al hecho que, en virtud de un contrato verbal, el demandante peticionario realizaba gestiones de ventas de ciertos pro-ductos de los demandados recurridos, en particular la línea Mano Sport. Ello a cambio de una comisión de 5%. Así, el demandante peticionario gestionaba y remitía órdenes de compra para los demandados recurridos y estos últimos se encargaban de la producción, el almacenaje y la entrega de la mercancía. Durante la relación comercial entre las par-tes, el demandado trajo nuevos clientes a la compañía —véase Apéndice de la Solicitud de certiorari, pág. 371— y, según admitió la señora Brenda Ramos, las ventas aumen-taron luego de que el demandante peticionario comenzó a promover sus productos. Id., pág. 163.
Por otro lado, no existe controversia en torno al hecho que el demandante peticionario tenía libertad para ejercer sus gestiones de promoción y venta, pues decidía a qué clientes visitar y no tenía un horario fijo de trabajo. Ade-más, según estipularon las partes, el señor Cruz Marcano no adquiría la mercancía; no controlaba los precios, los tér-minos de pago, las ventas a crédito o las devoluciones de mercancía; no mantenía inventario de mercancía ni facili- *552 dades de almacén; no tenía empleados; no asumía el riesgo por pérdida de mercancía, y no invertía dinero en campañas publicitarias.
Los hechos antes detallados indican que el demandante peticionario posee algunos rasgos distintivos de un repre-sentante de ventas, puesto que se dedicaba a promover y vender la mercancía de los demandados recurridos a cambio de una comisión. En esa labor determinaba el tiempo que invertiría en cada cliente y tenía libertad para gestionar órdenes que luego remitía a los demandados recurridos. De igual modo, amplió el mercado de los demandados recurri-dos, puesto que trajo nuevos clientes y colaboró al aumento en las ventas de los productos de éstos. Por lo tanto, contra-rio a lo que determinaron los foros recurridos, el hecho que el demandante peticionario no controlara los precios ni las condiciones de venta, no asumiera riesgos comerciales aná-logos a los de un distribuidor, no estuviese a cargo de los aspectos de producción o entrega de la mercancía, no com-prara la mercancía y no tuviera instalaciones para su ope-ración, no lo excluye de suyo de la protección de la Ley Núm. 21.
No empece a lo anterior, entendemos que existen ciertas controversias de hechos que nos impiden determinar si el demandante peticionario es un representante de ventas para los fines de la Ley Núm. 21. En primer lugar, existe controversia en torno a si el demandante peticionario re-presentaba de forma exclusiva los productos de los deman-dados recurridos. (7) Un examen de las transcripciones de las deposiciones que obran en autos demuestra que el de-mandado Sánchez Tarazona indicó que “Mano Sport era la línea que le otorgamos [al señor Cruz Marcano] con el pri-vilegio, de que otro vendedor no iba a tener esa línea”. *553 Apéndice de la Solicitud de certiorari, pág. 377. De igual modo, la codemandada Ramos Ortiz admitió que, con ex-cepción de unas ventas que realizaba la casa (Artee Designers), no se contrató personal adicional para gestionar ven-tas de las líneas que el señor Cruz Marcano tenía a su cargo. íd., pág. 211.
Sin embargo, surge de las deposiciones que obran en autos que algunos clientes compraban directamente en la fábrica de los demandados recurridos y que éstos alegan que representaban la línea Mano Sport. Apéndice de la So-licitud de certiorari, págs. 373, 370-371 y 377. Además, a pesar de que el demandante peticionario aduce que era un representante exclusivo de la línea “Mano Sport”, él mismo reconoció que algunos clientes compraban directamente en la fábrica —íd., págs. 329-330— que no visitaba a ciertos clientes —íd., pág. 307— y admitió que advino en conoci-miento del hecho que en una ocasión otro vendedor tuvo en su poder un muestrario de la línea “Mano Sport” que él representaba. íd., págs. 331 y 335.
En virtud de las declaraciones contradictorias de las par-tes, entendemos que existe controversia sobre si el deman-dante peticionario cumple con el requisito de exclusividad dispuesto en la Ley Núm. 21. Así, existe controversia sobre si los demandados recurridos violaron el pacto de exclusivi-dad con el demandante peticionario al permitir que otro vendedor tuviese acceso a su línea o si, por el contrario, el demandante peticinario no era un representante de ventas exclusivo. En modo análogo, tampoco queda claro si los de-mandados recurridos simplemente vendían mercancía a los clientes que se acercaban a la fábrica o si tenían la facultad de promover la líneas en el mismo mercado o territorio en el que el demandante peticionario operaba. Además, no queda claro cuál era el mercado o territorio definido del deman-dante peticionario para determinar el ámbito de su operación. Ello nos impide determinar si, en efecto, el señor Cruz Marcano era un representante de ventas con carácter exclusivo en cierto mercado o territorio.
*554 Habida cuenta de que en este caso las partes no otorga-ron un contrato escrito que recoja los términos de su rela-ción y el tipo de exclusividad que se le concedió al deman-dado recurrido, surge una controversia de hecho sobre dicho aspecto de la relación. Estamos entonces ante una determinación de hechos que el foro primario debe realizar luego de que las partes desfilen prueba sobre los arreglos concertados entre ellos.
En segundo lugar, también existe controversia sobre los gastos en los que incurría el demandante peticionario y sobre si éste percibía una compensación adicional a su comisión. A pesar de que no se ha controvertido el hecho que el demandante incurría en gastos de seguros médicos, seguros de autos, teléfono celular y beeper, seguro social y computadora, existe controversia sobre si el demandante peticionario recibía compensación por sus gastos de trans-porte, tales como gasolina y peajes. El demandante peticio-nario aduce que sufragaba esos gastos. Sin embargo, el se-ñor Sánchez Tarazona indicó en su deposición que esos gastos los cubría la compañía. Nuevamente, en ausencia de un contrato escrito entre las partes y ante el hecho que la determinación de si un intermediario comercial es un re-presentante de ventas, requiere examinar —entre otros factores— el tipo de compensación que recibe y los gastos que su operación acarrea. Somos del criterio que erró el Tribunal de Primera Instancia al desestimar sumaria-mente la demanda sin celebrar una vista en su fondo en la que las partes pudieran presentar prueba sobre estos as-pectos de su relación comercial.
En conclusión, luego de estudiar los documentos que obran en el expediente del presente caso, entendemos que algunos de los elementos de la relación entre las partes indican que el demandante peticionario era un represen-tante de ventas de los demandados recurridos. Empero, debido a que las partes en este caso no formalizaron un contrato escrito que recoja los elementos rectores de su re-lación comercial, persisten dudas sobre ciertos hechos *555 esenciales para disponer del presente caso. Por lo tanto, existen controversias sobre si el demandante peticionario sufragaba todos sus gastos, tales como los de transporte, y sobre el carácter exclusivo o no de la relación. Esto es esen-cial para determinar si el señor Cruz Marcano es un repre-sentante de ventas cobijado por la Ley Núm. 21.
En vista de lo anterior, resolvemos que erraron los foros recurridos al desestimar sumariamente la presente de-manda por entender que el demandante peticionario no era un representante de ventas. Devolvemos el caso al Tribunal de Primera Instancia para la celebración del corres-pondiente juicio en su fondo. Advertimos que por el tiempo transcurrido desde la presentación de la demanda en el 1998, el foro primario debe atender el caso sin ulterior dilación.

Se dictará sentencia en conformidad con lo antes expresado.

Los Jueces Asociados Señor Rebollo López y Señor Fus-ter Berlingeri no intervinieron.

 Sobre los auxiliares del comercio, el comentarista Garrigues indica: “[t]oda persona que, en virtud de un contrato, queda obligada a realizar una prestación o periódicas prestaciones en favor de un comerciante, viene por este hecho a auxiliarle en su comercio .... Pero estas personas no se proponen exclusivamente ser auxiliares de un comerciante; antes bien, son ellas por sí comerciantes substantivos, cuyo gé-nero de comercio no se opone, sino que se coordina o subordina, al de otros comerciantes. Más que auxiliares del comerciante son auxiliares del comercio.” J. Garrigues, Curso de Derecho Mercantil, 7ma ed., Madrid, Imprenta Aguirre, 1976, Vol. I, pág. 658.

 No existe unanimidad de criterio en torno a la clasificación y distinción entre los contratos de distribución y de agencia. Así, algunos comentaristas indican que
“[e]l agente, aunque es un comerciante independiente, tiene la función de pro-mover la venta de bienes del productor y de disponer todo lo necesario para concer-tarlas entre éste y el consumidor.
“A diferencia del concesionario o del franquiciado, no compra los productos para revenderlos y obtener como lucro la diferencia entre el costo y el precio de venta; el lucro del agente está dado por la comisión que le reconoce el productor.
“[Por otro lado, e]l distribuidor adquiere el producto a nombre y por cuenta propia, para enajenarlo a otros comerciantes o a los consumidores, y lucrar con la diferencia.” H. Llobera, Contrato de concesión comercial, Buenos Aires, Ed. Astrea, 2006, págs. 89-90.

 A pesar de que el Código de Comercio español —del cual proviene el nues-tro — • tampoco reglamenta el contrato de agencia, el legislador español aprobó en el 1992 la ley 12/1991, de 27 de mayo sobre contrato de agencia (BOE 25/5/92). Véase E. Chuliá Vicent y T. Beltrán Alandete, Aspectos jurídicos de los contratos atípicos II, España, Ed. Bosch, 1995, T. II, Cap. III, págs. 379-401.

 En casos posteriores al amparo de la Ley Núm. 75 de 24 de junio de 1964 (Ley Núm. 75), 10 L.P.R.A. sec. 278 et seq., hemos reiterado la distinción entre el distribuidor protegido por la Ley Núm. 75 y el viajante que no encuentra cabida en dicho estatuto. Cobos Liccia v. De Jean Packing Co., Inc., 124 D.P.R. 896 (1989); Lorenzana v. Gen. Accid. Ins. Co., 154 D.P.R. 547 (2001). Concluimos en Lorenzana que el agente de seguros en dicho caso no era un distribuidor a los efectos de la Ley Núm. 75, puesto que no tenía potestad para concluir contratos de seguros, no ejercía control sobre los términos de los contratos, no podía cancelar o renovar las pólizas, no tenía derecho a recibir primas a su nombre, no podía nombrar agentes de seguros, no concedía crédito y no asumía el riesgo de su gestión. Además, aclaramos que un distribuidor debe hacer más gestiones de promoción que las asociadas a un vendedor. Lorenzana v. Gen. Accid. Ins. Co., supra.

 En las vistas públicas celebradas el 31 de julio de 1990 sobre la medida, el Sr. Manuel Taboas, presidente de la Asociación Puertorriqueña de Representantes de Fábrica, aclaró que los distribuidores compran los productos, mantienen inventario y tienen potestad para establecer los términos en cuanto a ventas a crédito, el territo-rio y el mercado; los representantes de ventas no tienen esa discreción. Además, los distribuidores recuperan su inversión y gastos de operaciones al establecer el precio del producto, mientras que los representantes de ventas no tienen control sobre el producto.

 En esta ocasión no nos pronunciamos sobre los diversos tipos de comisión o remuneración que un representante de ventas debe percibir para ser considerado como tal. No obstante, es esencial que la remuneración del representante de ventas no lo convierta en un empleado, puesto que entonces no estaríamos ante un empre-sario independiente, requisito indispensable de este tipo de agente.

 En modo análogo, los tribunales federales se han enfrentado a controversias sobre las características de un representante exclusivo de ventas al amparo de la Ley Núm. 21 y han establecido que la determinación sobre la existencia del requisito de exclusividad que se puede observar en el contrato entre las partes o en los acuerdos habidos entre ellas, es una determinación de hechos. Véanse: Orba, Inc. v. MBR Industries, Inc., 49 F. Supp.2d 67 (D. P.R. 1999); Innovation Marketing v. Tuffcare, Inc., 31 F. Supp.2d 218 (D. P.R. 1998).